THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31110, 33241, 57867. Promulgated December 12, 1935.

*C. E. Locke, Esq.*, for the petitioner, *John W. Townsend*, as *amicus curiae*.

*Chester A. Gwinn, Esq.*, for the respondent.

### OPINION.

ARUNDELL: Respondent determined deficiencies in petitioner's income tax of $60,920.07 for 1924, $64,365.42 for 1925, $157,006.23 for 1926, and $10,129.93 for 1928. The question for decision is whether certain so-called reserves maintained by the petitioner are reserves required by law within the meaning of section 245(a)(2) of the Revenue Acts of 1924 and 1926 and section 203(a)(2) of the Revenue Act of 1928. All other issues raised by the pleadings have either been withdrawn or settled by stipulation. Full effect will be given to the stipulation in the recomputations under Rule 50. The proceedings were consolidated for hearing and decision.

The petitioner, a New York corporation with its principal office at 393 Seventh Avenue, New York City, was organized in 1859 and ever since has been engaged in the life insurance business. In the taxable

years, it transacted business in every state of the United States except Texas.

In and prior to the taxable years, the petitioner issued cancellable and noncancellable accident and health policies insuring the holders thereof, in consideration for the payment of specified premiums, against loss from bodily injuries effected through external, violent and accidental means, and against disability from disease. The policies provided for the payment of sums certain in the case of loss of life, limb or sight by accident, for the payment of specified weekly indemnities during the continuance of disabilities caused by accident or disease, and for the reimbursement of the insured, up to specified limits, for surgical and hospital expenses.

*Additional reserve on noncancellable accident and health policies.*— In a noncancellable accident and health policy, although the risk insured against increases with the age of the insured and the claim costs of later years of the policy are, therefore, greater than those of the earlier years, the annual premium is uniform throughout the life of the policy. It follows that in each of the earlier years of a noncancellable policy the net annual premium exceeds the prospective claim costs, while in each of the later years the prospective claim cost exceeds the net annual premium.

This reserve is maintained and used for the purpose of supplementing the net annual premiums of such policies in their later years, to the extent that their prospective claim costs of such years exceed their net annual premiums.

The reserve is the amount, which, supplemented in each future year by the excess of the year's net premium over the year's prospective claim cost of every noncancellable policy in its earlier years, all accumulated with $3\frac{1}{2}$ percent compound interest, it is necessary to maintain to meet in future years the excess of prospective claim costs over annual net premiums in respect to all noncancellable policies in their later years.

Viewed as a fund, the reserve on December 31 of any year is:

(a) The fund maintained by petitioner for that reserve on December 31 of the preceding year; plus

(b) The excess of the current year's net premiums over the current year's prospective claim costs for policies in their earlier years; less

(c) The excess of the current year's prospective claim costs over the current year's net premiums for policies in their later years; plus

(d) The year's interest increment, at the rate of $3\frac{1}{2}$ percent.

The maintenance of this reserve with annual interest increments was required in the taxable years by sections 52, 84, 86, 93 and 95 of the Insurance Law of New York; by express rulings of the Superintendent of Insurance of the State of New York pursuant to the authority conferred on him by the statutes; by sections 10501 and

10502 of the Oklahoma Statutes, 1931; and by sections 4139 and 4181 of the General Statutes of Connecticut, Revision of 1930.

The amount of the reserve held by the petitioner as so required by state laws, at the beginning and end of each of the taxable years, was as follows:

| Year | Beginning of year | End of year |
|------|------------------|-------------|
| 1924 | $842, 385 | $1, 121, 437 |
| 1925 | 1, 121, 437 | 1, 357, 373 |
| 1926 | 1, 357, 373 | 1, 012, 283 |
| 1928 | 1, 126, 565 | 1, 404, 272 |

The respondent, in making his determination as to each of the taxable years, has not allowed a deduction of 4 percent of the mean of the reserve held at the beginning and end of the taxable year.

Respondent now concedes, on brief, that this reserve is " includible in the reserve funds required by law to be used in determining the deduction of '4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year.'" Believing this concession to be proper and in line with the decisions in *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585; *Maryland Casualty Co.* v. *United States*, 251 U. S. 342; *United States* v. *Boston Insurance Co.*, 269 U. S. 197; *New York Life Insurance Co.* v. *Edwards*, 271 U. S. 109; *Minnesota Mutual Life Insurance Co.* v. *United States*, 66 Ct. Cls. 481; *Massachusetts Mutual Life Insurance Co.* v. *United States*, 56 Fed. (2d) 897; *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686; *Continental Assurance Co.* v. *United States*, 8 Fed. Supp. 474; and *Midland Mutual Life Insurance Co.*, 19 B. T. A. 765, we deem it unnecessary to pursue the question further. The net income determined by the respondent for the taxable years will be reduced by the amounts of $39,276.44 for 1924, $49,576.20 for 1925, $47,393.12 for 1926, and $50,616.74 for 1928.

*Reserve for unpaid and unresisted accident and health claims.*— The purpose of this reserve is to maintain and accumulate funds to provide for the payment of benefits expected to arise from disabilities which have already commenced.

On December 31 of any year this reserve is the amount prospectively determined which it is necessary to maintain to cover:

(1) the present value, at $3\frac{1}{2}$ percent interest, of the total benefits which will probably accrue in the future years as a result of disabilities which commenced prior to the current year; plus

(2) the amount of unpaid benefits which have accrued as a result of disabilities which commenced prior to the current year; plus

(3) the present value, at 3½ percent interest, of the total benefits which will probably accrue in future years as a result of disabilities which commenced during the current year; plus

(4) the amount of unpaid benefits which have accrued as a result of disabilities which commenced during the current year.

Viewed as a fund, the reserve on December 31 of any year is:

(a) the fund maintained by petitioner for the reserve on December 31 of the preceding year, less the funds spent during the year on benefits arising from disabilities which commenced prior to the current year; plus

(b) the excess of funds held to meet the year's claim costs over amounts paid on benefits which arose from disabilities commencing during the. year; plus

(c) the year's interest increment, at the rate of 4½ percent.

Any deficiency in the amount maintained for the reserve on December 31 of the preceding year plus the current year's interest increment for the reserve, below the sum of items (1) and (2) of the prospective valuation plus benefits paid during the year as a result of disabilities which commenced prior to the current year, is taken from petitioner's surplus funds and entered in its annual statement as a loss item for the year. Any surplus of the amount of the reserve held on December 31 of the preceding year plus its current year's interest increment, over the sum of said items (1) and (2) plus the said benefits paid during the year as a result of disabilities which commenced prior to the current year, is added to the petitioner's surplus funds and entered in its annual statement as a profit item for the year.

Ten percent of the reserve at the beginning or end of any taxable year is held for the payment of benefits which have accrued and are unpaid, in respect to disabilities which have already commenced, and the remainder is held for the payment of benefits which will become due in the future, if the policyholders survive and remain disabled. The petitioner concedes that this 10 percent is not a reserve required by law, within the meaning of the applicable taxing statutes; and, therefore, we have only to consider whether the remaining 90 percent is such a reserve.

The maintenance of this reserve with annual interest increments was required in the taxable years by sections 52, 84, 86, 93 and 95 of the Insurance Law of New York; sections 10501 and 10502 of the Oklahoma Statutes, 1931; sections 4139 and 4181 of the General Statutes of Connecticut, Revision of 1930; and by the express ruling of the Commissioner of Insurance of Indiana made on January 22, 1923, pursuant to the statutes of that state. It was also required by the express rulings of the Superintendent of Insurance of New York dated July 21, 1925, and December 18, 1926, made pursuant to authority conferred by section 93 of the New York Insurance Law.

The amount of the reserve held by the petitioner, as so required by state laws, at the beginning and end of each of the taxable years, was as follows:

| Year | Beginning of year | End of year |
|------|-------------------|-------------|
| 1924 | $381,327 | $378,744 |
| 1925 | 378,744 | 394,563 |
| 1926 | 394,563 | 1,193,378 |
| 1928 | 1,488,742 | 2,055,355 |

Respondent, in making his determination as to each of the taxable years, has allowed a deduction of 4 percent of the mean of the reserve held at the beginning and end of the taxable year, amounting to $15,201.42 for 1924, $15,466.14 for 1925, $31,758.82 for 1926, and $70,881.94 for 1928. He now contends that this reserve is not a reserve required by law within the meaning of the taxing statutes, and that the allowance of the aforesaid deductions is erroneous; and he lays claim to the increased deficiencies that may result from the correction of his alleged error.

The meaning of the term "reserve funds required by law", as employed by Congress in the several taxing acts, has been considered in a number of decided cases [1] involving either fire, marine, casualty, or life insurance companies, under the revenue acts in force prior and subsequent to the Revenue Act of 1921. That act made a material change in the provisions relating to the taxation of insurance companies. Under prior revenue acts, insurance companies were allowed to deduct from income the net additions to the reserve funds required by law, while in the 1921 and all later acts the deduction provided for is "an amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year." The decisions in these cases, except that in *Helvering* v. *Inter-Mountain Life Insurance Co.*, *supra*, which came later, have been analyzed, discussed and interpreted in a lengthy opinion by the Court of Claims in *Continental Assurance Co.* v. *United States, supra*, cited and approved by the Supreme Court in the *Inter-Mountain* case. We can add little to what was there said by the Court of Claims; and to go over the same ground here would unnecessarily burden and extend

---

[1] *McCoach* v. *Insurance Co. of North America, supra; Maryland Casualty Co.* v. *United States, supra; United States* v. *Boston Insurance Co., supra; New York Life Insurance Co.* v. *Edwards, supra; Minnesota Mutual Life Insurance Co.* v. *United States, supra; Massachusetts Mutual Life Insurance Co.* v. *United States, supra; Helvering* v. *Inter-Mountain Life Insurance Co., supra; Continental Assurance Co.* v. *United States, supra;* and *Midland Mutual Life Insurance Co., supra.*

this opinion. Interpreting the cases set out in the margin, the Court of Claims said:

Properly interpreted we think these last mentioned cases establish the principle that the term "reserve" has a special meaning in the law of insurance and means a sum of money variously computed or estimated which, with accretions from interest, is set aside, "reserved," as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. Also, that reserves for matured accrued claims which are payable in cash or subject to certain options cannot be included in the " reserve required by law " within the meaning of the taxing act.

Summing up, the court stated:

After a careful study of the nature and purpose of reserves maintained by life insurance companies in the light of all the decisions which have been rendered upon the subject and the plan of taxation of such companies as provided in the federal taxing acts, we conclude: (1) That accrued liabilities are not the subject of the "reserve fund" deductions granted by Congress in any of the revenue acts; (2) that the "reserve" contemplated in the Federal statutes is "that fund which when added to the present value of future net premiums is equal to the present value of future death claims"; that is, the mathematical equivalent of the obligation incurred by the company to pay the sum insured at the death of the policyholder or upon the surrender and cancellation of the policy; (3) that the "reserve" contemplated in the federal statutes is calculated upon the basis of a selected table of mortality plus an assumed rate of interest; and that reserves not so calculated, whether required by state law or by state officer, are not "reserve funds required by law" within the meaning of the federal statutes; and (4) that the "reserve fund" required by law within the meaning of the federal statutes does not include "solvency" reserves required to be maintained by state law or state officer to keep the company in sound financial condition.

In the *Inter-Mountain* case, the Supreme Court, in considering the identical question before the Court of Claims in the *Continental Assurance Co.* case—whether funds held for payment of matured unsurrendered and unpaid coupons attached to 20-payment life policies, which were payable in cash or subject to certain options, constituted " reserve funds required by law "—stated as follows:

The word "reserve" has many meanings. Accounts creating reserves are set up in almost every line of business and funds evidenced by the book entries are held for many and widely different purposes. As the Act does not permit corporations other than insurance companies to make deductions of the kind here under consideration, "reserve funds" may not reasonably be deemed to include values that do not directly pertain to insurance. In life insurance the reserve means the amount, accumulated by the company out of premium payments, which is attributable to and represents the value of the life insurance elements of the policy contracts. The premiums include enough, over and above what is needed to maintain proper insurance reserves, to provide for the discharge of coupon liability according to the terms of the policy. The coupon values are the equivalent of cash and may be used to pay premiums on the face amount of the policy, to procure additional insurance, to lessen the number of annual premiums or otherwise to obtain insurance protection. The amounts so applied cease to exist as coupon liabilities and automatically become a part of the life insurance reserves. These differ

essentially from coupon liability. Life insurance matures only upon the death of the insured and the life reserve is based upon that contingency, whereas liability on the matured coupons depends upon no contingency. It follows that the insurance reserves alone constitute the base on which the deduction is to be computed. Reserves against matured coupons are excluded.

The funds set aside to meet the probabilities covered by this reserve are " accumulated by the company out of premium payments." The reserve, at any valuation date, to the extent of 90 percent thereof, represents the present value, at 3½ percent interest, of benefits expected, upon the basis of selected tables of probabilities, to be paid in the future to policyholders who have already been disabled by accident or disease. It is, therefore, a reserve " calculated upon the basis of * * * selected table[s] of * * * [probabilities] plus an assumed rate of interest ", and " represents the value of the * * * [disability] insurance elements of the policy contracts." And, since the contingencies insured against are those which may arise in the future, though the accidents or illnesses which may give rise thereto have already occurred, the reserve, to the extent indicated, is strictly " a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims." We have here then a true insurance reserve fund required by law.

The respondent's present position is predicated upon the proposition that contemporaneously with the occurrence of accident or inception of disease, the petitioner becomes obligated to pay all benefits which the policyholder may receive in the future because of such accident or disease, and that this obligation constitutes a present loss or liability and the reserve is, therefore, a " solvency " reserve. This discloses a confusion of the possible future loss insured against with the actual accident or illness which may cause that loss to happen. Accident and illness in and of themselves give rise to no liability on the part of the petitioner. What is insured against, as clearly indicated by the policy contracts is loss of life, limb, sight or time by accident, disability caused by disease, and the incurrence of hospital and surgical expenses. In other words, the petitioner's liability in respect to any accident or disease is determined, both in fact and in amount, by future events; it is wholly contingent upon loss of life, limb, sight or time, or the incurrence by the policyholder of hospital and surgical expenses; and if none of these things occur, the petitioner has incurred no liability whatsoever in respect to that particular accident or illness.

The respondent casually suggests that this reserve is maintained to meet the very contingencies for which the petitioner's true insurance reserves were created, and, therefore, the former is but a duplication of the latter. Here again we have confusion. The petitioner

maintains only two insurance reserves in respect to its accident and health policies—the reserve first discussed in this opinion and the one now under consideration. That, as to cancellable policies, there can be no duplication in the two reserves is obvious, for the first is maintained only in respect to noncancellable policies; and that there can be no duplication in respect to noncancellable policies is clear when the purposes of the two reserves are understood. The additional reserve on noncancellable accident and health policies relates to benefits that may become due from disabilities commencing in the future, that is, arising from accidents which may happen or maladies which may begin in the future. The reserve for unpaid and unresisted accident and health claims, on the other hand, is held to provide for future benefits that may become due from disabilities which have commenced in the past, that is, arising from accidents which have already happened or maladies which have already started. As we understand the situation, in valuing the first of these reserves there are excluded all policies under which benefits have accrued and will accrue in the future because of accidents which have happened or maladies which have begun in the past, and that it is in respect to these policies only that the second of these reserves is maintained. The two reserves are, therefore, necessarily mutually exclusive.

In view of the foregoing, we hold that the reserve under consideration is a reserve fund required by law within the meaning of the applicable taxing statutes; that, to the extent of 90 percent thereof, the deductions allowed by the respondent in respect to this reserve are correct and proper; and that the remaining 10 percent of said deductions were improperly allowed. The net income determined by the respondent for the taxable years will be increased by the amounts of $1,520.14 for 1924, $1,546.61 for 1925, $3,175.88 for 1926, and $7,088.19 for 1928, and the respondent's claim for increased deficiencies, if any, will be allowed to that extent.

*Reserve for dividends left with the company to accumulate at interest and accrued interest thereon.*—In the taxable years and prior thereto, petitioner's policyholders were privileged in accordance with the terms of their policies to leave dividends on their policies with the petitioner to accumulate at interest. Upon the maturity of any of its policies credited with such dividend accumulations, the petitioner was obligated to pay the amount of the dividend accumulation so credited, in addition to the face amount of the policy, to the policy beneficiary.

Under the terms of his policy any of the petitioner's policyholders could utilize his dividend accumulations, left with the petitioner, to convert his policy to a paid-up policy of the same face amount whenever the reserve on the face amount of his policy together with

the reserve on any dividend additions thereto, plus the amount of the dividend accumulation equaled the single net premium required for such a paid-up policy.

The purpose of this reserve was to maintain a fund equal to the amount of the dividends left with petitioner to accumulate at interest and accrued interest thereon, and to supplement the fund with the annual increments of interest at a guaranteed rate.

The maintenance of this reserve with such annual increments of interest was required in the taxable years by sections 52, 84, 86 and 95 of the Insurance Law of New York; sections 10501 and 10502 of Oklahoma Statutes, 1931; sections 4139 and 4181 of the General Statutes of Connecticut, Revision of 1930; and by express ruling of the Commissioner of Insurance of Indiana made on January 22, 1923, pursuant to the statutes of that state.

The amount of the reserve held by the petitioner, as so required by state laws, at the beginning and end of each of the taxable years, was as follows:

| Year | Beginning of year | End of year |
| --- | --- | --- |
| 1924 | $4,491,801.90 | $5,600,621.63 |
| 1925 | 5,600,621.63 | 6,808,071.93 |
| 1926 | 6,808,071.93 | 7,944,063.22 |
| 1923 | 9,212,878.80 | 10,805,161.77 |

The respondent, in making his determination as to each of the taxable years, has not allowed a deduction of 4 percent of the mean of the reserve held at the beginning and end of the taxable year.

In *Midland Mutual Life Insurance Co.*, *supra*, it was expressly held by this Board that a reserve maintained for the same purposes as the reserve here under consideration is not a reserve fund required by law. In *Continental Assurance Co.* v. *United States*, *supra*, and *Helvering* v. *Inter-Mountain Life Insurance Co.*, *supra*, it was held that funds reserved against matured and unpaid coupons attached to 20-payment life policies are not reserve funds required by law, but constitute solvency reserves to meet existing liabilities of the companies. In these cases, the matured coupons were payable in cash or could be applied in substantially the same way as the dividends payable under petitioner's policies. We are unable to see any distinction between a reserve for matured coupons payable and a reserve for declared dividends payable. The payment of neither the coupons nor the dividends is dependent upon any contingency. Both reserves are liability or solvency, and not insurance, reserves. The respondent very properly denied any deduction in the taxable years in respect to this reserve.

*Judgment will be entered under Rule 50.*