HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* ILLINOIS LIFE INSURANCE CO.

No. 27. Argued October 16, 1936.—Decided November 9, 1936.

*Mr. Thurman Arnold,* with whom *Solicitor General Reed, Assistant Attorney General Jackson,* and *Messrs. Sewall Key, Norman D. Keller,* and *Edward H. Horton* were on the brief, for petitioner.

*Mr. Samuel B. Kraus,* with whom *Mr. William M. Klein* was on the brief, for respondent.

Mr. Justice Butler delivered the opinion of the Court.

In its income tax return for 1929, respondent made a deduction of $133,755.71. The Board of Tax Appeals held the deduction rightly taken, 30 B. T. A. 1160, 1162; the Circuit Court of Appeals affirmed. 80 F. (2d) 280. Upon petitioner's insistence that the decision below conflicts with *Helvering* v. *Insurance Co.*, 294 U. S. 686, we granted this writ.

The case involves a construction of a clause of § 203 (a) (2), Revenue Act of 1928, 45 Stat. 842, which declares that, in case of a life insurance company, net income means gross income less, among other permissible deductions, an amount equal to four per cent of the mean of the reserve funds required by law and held at the beginning and end of the taxable year. That provision is a reënactment of § 245 (a) (2), Revenue Act of 1921, which in *Helvering* v. *Insurance Co.* we held not to apply to assets reserved by a life insurance company against matured, unsurrendered and unpaid coupons attached to its policies. That decision rests upon the ground that the reserves in respect of the coupon liability were not essentially insurance reserves which alone constitute the base on which deduction is computed. The question now for decision is whether respondent's assets reserved in 1929 in respect of its survivorship investment funds are included in that base.

The reserves in question conveniently may be described by reference to a typical policy. Applicable to age 35, it contains the company's agreement, upon death of the insured, to pay $10,000 to the beneficiary; the annual premium is $379.90, payable for 20 years. The company also agrees that, out of each year's premium after the first, $64.60 will be placed in the survivorship investment fund applicable to policies on the survivorship investment plan issued in the same calendar year; that no

deduction shall be made from the fund; that all contributions to it shall be accumulated at three and a half per cent compound interest; that, if the insured shall survive the twentieth anniversary of the policy, the company will apportion to the policy as a survivorship investment a sum bearing the same proportion to the total in the fund as the contributions from premiums paid on that policy bear to the aggregate contributions from premiums paid on all policies in the same class in force at the end of 20 years. Thus, the entire fund is divided among the persistent surviving contributors. The policy provides for optional settlements at the end of 20 years: (A) The insured may continue the policy as one fully paid up and in addition receive either cash payment of the survivorship investment apportioned to it or, if then insurable, a fully paid up life insurance policy for such amount as would be purchased by the survivorship investment. (B) The insured may surrender the policy and receive payment of the cash value, $6,100, and in addition the survivorship investment.

The mean of petitioner's liabilities in respect of the survivorship investment funds at the beginning and end of 1929 was $3,343,982.67, four per cent of which is the item in controversy.

The phrase "required by law" includes only reserves that directly pertain to life insurance. Other reserves, even though required by state statutes regulatory of the business authorized to be carried on by life insurance companies, are not included. Under these policies the company's liabilities on account of the investment funds are independent of those attributable to life insurance risks. The right to participate in the investment funds is not dependent upon death of the insured. The company's liability is the total of contributions to the fund plus the interest agreed to be paid. It is bound to dis-

charge this liability at the end of 20 years. Its life insurance liability arises upon the death of the insured. Ascertainment of the reserves attributable to that liability involves consideration of the amount contributed to them out of premiums plus interest for a period estimated on the basis of mortality.[1] The survivorship investment fund feature of these policies has no relation to life insurance risks. Under our decision in *Helvering* v. *Insurance Co., supra,* reserves in respect of that feature are not covered.

*Reversed.*

Mr. Justice Stone took no part in the consideration or decision of this case.

---

[1] The law of Illinois, under which respondent was organized, declares: "All valuations made by it [the Department of Trade and Commerce] or by its authority shall be made upon the net premium basis. The legal minimum standard for valuation of contracts . . . shall be the American Experience Table of Mortality with interest at 3½ per centum per annum." Cahill's Illinois Revised Statutes (1929), c. 73, par. 331.

It is also declared: ". . . that if any company shall issue any nonparticipating policy under the terms of which any stipulated part of premiums received is to be placed in a separate fund for subsequent apportionment, such company shall furnish the Department of Trade and Commerce each year . . . a statement" concerning the fund so provided for "and the amount of said fund at the end of the year; which shall be carried as a distinct and separate reserve liability of the company for the benefit of the classes of policies from the premium payments on which the sum was accumulated. No part of said fund prior to the time of distribution stipulated in the contract shall be considered in determining the loan and cash and other surrender values provided for by this Act. . . . No such policy shall be issued which by its terms shall provide that more than twenty-five per cent of the annual premium shall be placed in such fund. . . ." *Idem,* par. 375, § 5–c.