PAN-AMERICAN LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84638. Promulgated December 23, 1938.

*Eugene J. McGivney, Esq., Solomon S. Goldman, Esq.,* and *Edwin J. Prinz, Esq.,* for the petitioner.

*Allen T. Akin, Esq.,* for the respondent.

1434

OPINION.

BLACK: The first question for decision is whether petitioner is entitled to deduct from its gross income an amount equal to 3¾ per centum of the mean of its reserve for incurred disability benefits held at the beginning and end of the taxable year. The applicable statute is the Revenue Act of 1932, the material provisions of which are set out in the margin.[1]

Petitioner is a "life insurance company" as that term is defined in section 201 (a). The policies with respect to which the reserve in question was held were "contracts of combined life, health, and accident insurance." Under all of these policies the insured agreed to pay a certain annual premium in consideration for petitioner agreeing to pay the insured's beneficiary a sum certain upon receipt of due proofs of death of the insured. In some of the policies the insured agreed to pay a small additional premium in consideration for petitioner agreeing to waive the future payment of premiums in case the insured became totally and permanently disabled as the result of bodily injury or disease; and in some of the policies the insured agreed to pay a larger additional premium in consideration for petitioner agreeing not only to waive the future payment of premiums as they became due, but also to pay the insured a stated monthly income in case the insured became totally and permanently disabled as the result of bodily injury or disease. To meet its future unaccrued and contingent obligations under these combined life, health, and accident policies, petitioner set up and held at the beginning and end of the taxable year several reserve funds. Its largest reserve was a reserve to meet the purely death claims as and when they matured. This reserve is a part of the reserve for outstanding policies and annuities, reported on line 1, schedule A, of petitioner's income tax return. Another reserve was a reserve to meet its future unaccrued and contingent obligation to waive premiums or to waive

---

[1] SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

(a) DEFINITION.—When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

    *        *        *        *        *        *        *

SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

    *        *        *        *        *        *        *

(2) RESERVE FUNDS.—An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. * * *

premiums and to pay a monthly income, depending upon the type of policy, in cases of total and permanent disability where the insured had not yet become disabled. This reserve is a part of the reserve for disability and accidental death benefits, reported on line 2 of schedule A of petitioner's return. The statutory per centum of the mean of the two last mentioned reserves was deducted by petitioner and allowed by respondent as "reserve funds required by law", and those reserves are not involved in this proceeding. They constitute the larger part of petitioner's reserves "required by law." Another reserve reported by petitioner on line 3 of schedule A of petitioner's return was for supplementary contracts. This reserve petitioner concedes is a solvency reserve and that petitioner is entitled to no deduction by reason thereof. The fourth reserve, which is the one here involved, was set up by petitioner and held to meet its future unaccrued and contingent obligation to waive premiums or to waive premiums and to pay a monthly income, depending upon the type of policy, in cases of total and permanent disability where the insured had already become disabled. This reserve is the reserve for incurred disability benefits, reported by petitioner on line 4 of schedule A in the amounts of $311,250.91 and $378,915.36, respectively, and is subdivided according to the benefits reserved for, as follows:

|  | Beginning of year | End of year |
|---|---|---|
| Reserve for premium waiver benefits | $93,375.27 | $113,674.60 |
| Reserve for monthly income benefits | 217,875.64 | 265,240.76 |
| Total | 311,250.91 | 378,915.36 |

This reserve for incurred disability benefits did *not* include any amount for benefits which had already *accrued* in favor of the disabled insured. Such latter amounts would represent pure liabilities of petitioner and the reserve set up therefor would be in the nature of a solvency reserve and not a reserve "required by law" as that term is used in section 203 (a) (2) of the Revenue Act of 1932. Cf. *Maryland Casualty. Co.* v. *United States*, 251 U. S. 342, as modified by *United States* v. *Boston Insurance Co.*, 269 U. S. 197. It included only amounts held for the payment of benefits which would become due in the future, providing the insured survived and remained disabled.

At the time petitioner filed its income tax return for the year 1933 the respondent's regulations (art. 971, Regulations 77) held that the type of reserve here involved was a reserve required by law. The per-

tinent provisions of these regulations are set out in the margin.[2]  Substantially the same provisions were contained in all of the regulations issued under all of the revenue acts beginning with the Revenue Act of 1921.  See article 681 of Regulations 62, 65, and 69, and article 971 of Regulations 74.  "Items 7–11 of the liability page of the annual statement" referred to in the regulations are also set out in the margin.[3]  These items correspond with lines 1 to 5, respectively, of "Schedule A—Reserve Funds" contained in the blank income tax return for life insurance companies, form 1120 L.  Item 10 of the liability page of the annual statement is the item petitioner relied upon at the time it filed its return as authority for deducting 3¾ per centum of the mean of the reserve for incurred disability benefits held at the beginning and end of the taxable year.

Shortly after the Court of Claims handed down its decision in *Continental Assurance Co.* v. *United States*, 8 Fed. Supp. 474, the respondent issued Regulations 86 under the Revenue Act of 1934.  Although section 203 (a) (2) of the Revenue Act of 1934, so far as material here, was the same as similar provisions in all the prior revenue acts beginning with the Revenue Act of 1921, the respondent in article 203 (a) (2)–1 of Regulations 86 omitted all reference to items 7–11 of the liability page of the annual statement for life insurance companies and held, among other things, that the reserve funds required

---

[2] ART. 971.  *Tax-exempt interest and reserve funds.*—Under paragraphs (1) and (2) of section 203 (a), life insurance companies are entitled to deduct from gross income:

\* \* \* \* \* \* \*

(2) Four per cent of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per cent shall be substituted for 4 per cent.  The reserve deduction is based upon the reserves required by express statutory provisions or by the rules and regulations of the State insurance departments when promulgated in the exercise of a power conferred by statute; but such reserves do not include assets required to be held for the ordinary running expenses of the business nor do they include the reserve or net value of risks reinsured in other solvent companies to the extent of the reinsurance.

\* \* \* \* \* \* \*

\* \* \*  A company is permitted to make use of the highest aggregate reserve called for by any State in which it transacts business, but the reserve must have been actually held as shown by the annual statement.  Generally speaking, the following will be considered reserves as contemplated by the law : Items 7–11 of the liability page of the annual statement for life insurance companies \* \* \*.

[3] 7. Net Reserve (i. e. the net present value of all the outstanding policies in force on the 31st day of December, 19__, as computed by the _____ on the following tables of mortality and rates of interest)_____ \$_____

8. Extra reserve for total and permanent disability benefits, \$_____, and for additional accidental death benefits, \$_____, included in life policies_____ \$_____

9. Present value of amounts not yet due on supplementary contracts *not* involving life contingencies computed by the_____ \$_____

10. Present value of amounts incurred but not yet due for total and permanent disability benefits_____ \$_____

11. Liability on policies canceled and not included in "net reserve" upon which a surrender value may be demanded_____ \$_____

by law did *not* include "estimated value of future premiums which have been waived on policies after proof of total and permanent disability." Thereafter, the Supreme Court handed down its decision in *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686, in which it cited with approval *Continental Assurance Co. v. United States, supra.* The respondent then issued Treasury Decision 4615. (Cumulative Internal Revenue Bulletin XIV—2, p. 310), in which he amended article 681 of Regulations 62, 65, and 69, and article 971 of Regulations 74 and 77, to read the same, so far as material here, as article 203 (a) (2)–1 of Regulations 86, *supra.* Since then the Supreme Court has decided *Helvering* v. *Illinois Life Insurance Co.*, 299 U. S. 88.

The respondent, in support of his contention that the term "reserve funds required by law" in section 203 (a) (2), *supra,* does not include the reserve for incurred disability benefits here in question, relies upon his regulations as amended by T. D. 4615, *supra,* and the decisions of *New York Life Insurance Co.* v. *Edwards*, 271 U. S. 109 (point 3), *Helvering* v. *Inter-Mountain Life Insurance Co., supra,* and *Helvering* v. *Illinois Life Insurance Co., supra.*

Although not a conclusive test, it is, nevertheless, a prerequisite to the allowance of any deduction under section 203 (a) (2), *supra,* that the reserve in question be required, as expressed by the respondent in his regulations, either by "express statutory provisions or by the rules and regulations of the State insurance departments when promulgated in the exercise of a power conferred by statute." Cf. *McCoach* v. *Insurance Co. of North America,* 244 U. S. 585; *Maryland Casualty Co.* v. *United States, supra; United States* v. *Boston Insurance Co., supra; New York Life Insurance Co.* v. *Edwards, supra; Helvering* v. *Inter-Mountain Life Insurance Co., supra;* and *Helvering* v. *Illinois Life Insurance Co., supra.* And the respondent concedes in his regulations that a company is permitted to make use of the highest aggregate reserve called for by any state in which it transacts business. Petitioner transacted business in Louisiana, Oklahoma, Indiana, and Illinois. As stated in our findings of fact, the reserve in question was required by the laws of Oklahoma, cf. *In re Oklahoma National Life Insurance Co.*, 68 Okla. 219; 173 Pac. 376, and until July 1, 1937, by the laws of Illinois.

The petitioner having met successfully the prerequisite stated in the preceding paragraph, the question at issue, at least as far as premium waiver benefits are concerned, is identically the same as the issue relating to the reserve for incurred disability benefits in the recent case of *Monarch Life Insurance Co.*, 38 B. T. A. 716. In that case we held that the reserve for incurred disability benefits (apparently involving premium waiver benefits only) was a reserve fund

required by law and that the petitioner there was entitled to deduct from its gross income an amount equal to 3¾ per centum of the mean of such a reserve fund held at the beginning and end of the taxable year. It follows that, at least as far as premium waiver benefits are concerned, the instant proceeding is controlled by our holding in *Monarch Life Insurance Co.*, *supra*. Cf. *Equitable Life Assurance Society of the United States* (reserve for unpaid and unresisted accident and health claims), 33 B. T. A. 708, 711.

Regarding that portion of the reserve for incurred disability benefits involving monthly income benefits, we know of no reason why it should be treated any differently from that portion of the reserve involving premium waiver benefits. The policies involving both kinds of benefits are substantially the same, except that in those involving both premium waiver and monthly income benefits the insured agrees to pay a larger additional premium than the insured pays in those policies involving premium waiver benefits only. We hold that both portions of the reserve for incurred disability benefits involved herein should be treated alike and that petitioner is entitled to deduct from its gross income the amount of $12,940.62 set out in our findings as representing 3¾ per centum of the mean of the reserve for incurred disability benefits held at the beginning and end of the taxable year.

Before passing this question, however, we wish to say that we have carefully considered the respondent's contentions and find ourselves unable to concur in the belief that the effect of the holdings in the *New York Life* case, the *Inter-Mountain Life* case and the *Illinois Life* case is to exclude the present reserve from the classification of "reserve funds required by law" as that phrase is used in section 203 (a) (2) of the Revenue Act of 1932.

In the *New York Life* case, *supra*, the Supreme Court was not satisfied from the evidence that the reserve there involved in point (3) was required by the laws of New York. Neither was there anything to show how the value of the contractual benefits under the policies was arrived at. Under those circumstances the Court said: "The company has not shown enough to establish its right to the exemption." The proof lacking in the *New York Life* case has been supplied in the instant proceeding.

The reserve funds involved in the other two cases were in the nature of solvency reserves and were essentially different from the one which we are now considering. For instance, the reserve in the *Inter-Mountain* case, *supra*, was against matured, unsurrendered, unpaid coupons, and was not essentially an insurance reserve. Inter-Mountain's liability thereon depended upon no contingency. The insured there at any time could have withdrawn the matured cou-

pons in cash. Likewise, in the *Illinois Life* case, *supra*, the reserve for survivorship investment funds was not a reserve set aside to mature or liquidate any future unaccrued and contingent claims. Illinois Life was bound at the end of 20 years to discharge a definite liability consisting of the total contributions to the fund plus the interest it had agreed to pay. The reserve set up to meet this definite liability was in substance nothing more than a solvency reserve.

Neither do we think the Supreme Court in the *Inter-Mountain* and *Illinois Life* cases intended to construe the phrase "reserve funds required by law" to mean only the reserve funds relating to *life* insurance. It seems to us that the structure of the act requires a recognition of other reserves. Sec. 201 (a), *supra*, defines the term "life insurance company" as one "engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds." In this definition there can be no doubt but that Congress intended the term "reserve funds" to apply to "contracts of combined life, health, and accident insurance" as well as to "life insurance and annuity contracts." Therefore, it would seem to follow that the term "reserve funds" in section 203 (a) (2) would also apply to "contracts of combined life, health, and accident insurance," which is the type of policies involved in the instant proceeding. Any other construction of the act would be inconsistent with the respondent's allowance of the statutory per centum of the mean of the reserve for disability and accidental death benefits reported on line 2 of schedule A of the return and briefly referred to at the beginning of this opinion. The only difference between that reserve and the one for incurred disability benefits is that in the latter the disability has already taken place. But the insured must survive and remain disabled on each and every anniversary date of the policy before any actual liability accrues against petitioner.

*Interest question.*—As we have already stated, respondent in his brief concedes that petitioner is entitled to deduct the interest items covered by paragraphs (b), (d), and (e) of the stipulation. He contests the deduction of those included in paragraphs (a) and (c) of the stipulation. These latter have been described in our findings of fact.

The second question, therefore, for decision falls into two subdivisions—(1) whether petitioner is entitled to deduct $9,282.31 as interest in connection with two types of its ordinary life policies, and (2) whether petitioner is entitled to deduct $257.88 as interest in connection with the type of trust agreements referred to in our

findings of fact. The applicable statute is the Revenue Act of 1932, the material provisions of which are set out in the margin.[4] We shall first consider the deductibility of the so-called interest in connection with the two types of petitioner's ordinary life policies.

The first type of policy provides for a lump sum payment at death and for a' series of 240 monthly installments. A copy of one of these policies is attached to the stipulation. It provides for a lump sum payment of $500 at death and for a series of 240 monthly installments of $50 each, aggregating in all $12,500. The commuted value of this policy is $9,200. The policy contains a provision that at any time before his death the insured may elect to have the commuted value paid at his death in one sum rather than a first payment of $500 followed by a series of 240 monthly installments of $50 each. But if no such election is made by the insured, the beneficiary can neither assign nor commute the installments therein provided for.

The second type of policy simply provides for one lump sum payment at death unless the insured during his life time shall elect to have the insurance paid to the beneficiary in any one of the equal annual installments from five to twenty-five years provided for in that paragraph of the policy headed "Installment Benefits—Installment Settlements." A copy of one of these policies is also attached to the stipulation. It provides for a lump sum payment at death of $5,000, or for either 5, 10, 15, 20, or 25 equal annual installments, providing the insured so elected during his lifetime. In all of the policies of the second type that are here involved the insured had so elected. Assuming that in the case of the sample policy of this type referred to above the insured had elected to have the insurance paid in 20 equal annual installments, the beneficiary of this policy would receive 20 equal annual installments of $339.90 (5 times $67.98) aggregating in all $6,798, instead of the lump sum of $5,000 payable at death which was originally provided for. As in the first type of policy, if the insured in the second type of policy died after electing to have the insurance paid in equal annual installments, the beneficiary could not thereafter either assign or commute the installments therein provided for.

Petitioner contends that in the first type of policy the difference between the commuted value of $9,200 and the aggregate payments

---

[4] SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

\* \* \* \* \* \*

(8) INTEREST.—All interest paid or accrued within the taxable year on its indebtedness \* \* \*.

of $12,500, or $3,300, and in the second type of policy the difference between the commuted value of $5,000 and the aggregate payments of $6,798 or $1,798, represents interest on its indebtedness which it is entitled to deduct as and when it is paid to the beneficiary. As soon as a policy of either type becomes a death claim, petitioner deposits the commuted value of that policy in a separate fund, which fund on a gradually declining basis is improved with interest at the rate of 3½ per centum per annum so that the commuted value plus the interest will exactly equal the aggregate installments paid to the beneficiary. At the beginning of the taxable year petitioner had on deposit $270,164.83 in connection with about 43 policies embracing both types here under discussion. During the year the fund was increased by $6,575.56, due to the death of one of petitioner's policyholders of the first type. Also during the year the fund deposited in connection with the 44 policies was improved with interest in the amount of $9,282.31 and during the year there was paid to beneficiaries a total amount of $27,353.31. It is the $9,282.31 which petitioner contends it is entitled to deduct as interest paid on its indebtedness. It bases this contention partly upon the ground that the only reserve fund for which it has received a deduction under section 203 (a) (2) (see footnote No. 1, *supra*) is a reserve fund (included in the reserve for outstanding policies and annuities) set up to meet only the commuted value of the policies in question upon the death of the insured. At the time petitioner filed its return it also claimed a deduction under section 203 (a) (2) for the statutory percentage of the mean of a reserve for supplementary contracts, reported on line 3 of schedule A of petitioner's return. Included in this reserve were amounts set up to meet the difference between the commuted value and the aggregate payments to be made under the two types of ordinary life policies now under discussion. This deduction was disallowed by the respondent upon the ground that the reserve for supplementary contracts did not come within the term "reserve funds required by law" as that term is used in section 203 (a) (2). This action on the part of the respondent was originally assigned as error by the petitioner, with an assignment of error in the alternative "that if it is not entitled to a deduction of 3¾ percent of the mean of reserve funds on Supplementary Contracts * * * it should be allowed to deduct all interest paid, credited or accrued on the said reserve funds under Sec. 203 (a) (8) of the Revenue Act of 1932." At the hearing petitioner withdrew and abandoned its main assignment of error as to the reserve funds on supplementary contracts and relied solely on its alternative assignment of error that it was entitled to a deduction for alleged interest in the above amount of $9,282.31, upon the authority of *Great Southern Life Insurance Co.*, 33 B. T. A. 512, issue (b)

(1); affirmed upon other issues, 89 Fed. (2d) 54; certiorari denied, 302 U. S. 698. The question here under consideration, we think, is not the same as that we decided in *Great Southern Life Insurance Co.*, *supra*. The issue referred to by petitioner is issue (b) (1) in the latter case, wherein the taxpayer claimed a deduction from its gross income of the amount disbursed by it as interest on coupons which were theretofore left to accumulate with the company at interest and were surrendered during the taxable year and principal and interest were paid thereon. We held that under such circumstances the interest was deductible. We cited a regulation of the Commissioner which specifically covered the subject and allowed the deduction of interest paid under such circumstances. But we have not that issue in the instant case. One that would be somewhat comparable to it is where the insured dies and the beneficiary voluntarily leaves the proceeds of the policy on deposit with the insurance company and it agrees to pay interest thereon. We held in *Penn Mutual Life Insurance Co.*, 32 B. T. A. 839, that in such a case the insurance company is entitled to deduct the guaranteed rate of interest which is paid to the beneficiaries. That sort of interest the Commissioner concedes is deductible. The exact issue now before us was decided unfavorably to the instant petitioner's contentions in *Penn Mutual Life Insurance Co.*, *supra* (assignment of error No. (1), syllabus No. 2). Our decision in *Penn Mutual* was affirmed as to all contracts made or options exercised for installment settlements *prior* to the death of the insured, but was remanded as to all options for installment settlements *exercised by the beneficiary after* the death of the insured. *Penn Mutual Life Insurance Co. v. Commissioner,* 92 Fed. (2d) 962, 967, 968. All the contracts or options for installment settlements involved in the two types of ordinary life policies now under consideration were all made or exercised by the insured prior to the death of the insured, and are, therefore, ruled by that part of the Third Circuit's decision wherein it concluded, p. 968:

We hold, therefore, that the portion of the respective sums of $211,254.60 and $238,640.01, which in fact represents the 3 per cent. annual interest included in the installment settlements paid to beneficiaries by the petitioner under the Trust Certificate policy or under an option of the Ordinary Life policy exercised prior to the death of the insured, is not interest on indebtedness within the terms of the statute and cannot be deducted by the petitioner from its gross income. We sustain the ruling of the Board in so far as it relates to such payments.

Counsel for petitioner in his briefs recognizes that the decision in *Penn Mutual* is contrary to the petitioner's contention in the instant proceeding, but contends that the Board and the Circuit Court misapprehended the facts in that case and that the issue there should be distinguished from the issue here. We have considered this con-

tention of petitioner, but think we should abide by our previous decision as affirmed by the Third Circuit.

We hold, therefore, that petitioner is not entitled under section 203 (a) (8) of the Revenue Act of 1932 to deduct from its gross income as "interest paid or accrued within the taxable year on its indebtedness" the amount of $9,282.31 which it added during the taxable year to its deposits held under both types of ordinary life policies here involved. *Penn Mutual Life Insurance Co.* v. *Commissioner*, *supra*. Cf. *Penn Mutual Life Insurance Co.*, 32 B. T. A. 876 (part I).

Regarding the deductibility of $257.88 as interest in connection with the type of trust agreement attached to the stipulation as exhibit "J", the respondent contends that under *Massachusetts Mutual Life Insurance Co.* v. *United States*, 288 U. S. 269, no more interest may be allowed as a deduction to a life insurance company than that actually paid during the taxable year; and that in any event no amount is allowable as interest for the reason that petitioner has failed to show that no part of the amount of $257.88 is actually and in fact dividends under that part of the specimen trust agreement reading:

* * * and after the first interest year there shall also be added as additional interest thereon each year thereafter, such amount as may be determined by the Directors of the Pan-American Life Insurance Company and apportioned annually from the surplus earnings of the said Company for the preceding year.

The respondent, however, in effect concedes that if it were not for the above quoted provision of the trust agreement, any interest actually paid under the trust agreements of this type would be deductible under our decision in *Great Southern Life Insurance Co.*, *supra*.

In making the contention relative to the above quoted provision of the trust agreement, we think the respondent has overlooked that part of the trust agreement immediately preceding the above quoted provision which provides that: "The said net proceeds shall bear interest at the rate of 3½% per annum on funds remaining in the Company's possession at the end of each year" and also that part of the stipulation which provides that the amount of $257.88 was computed at 3½ per centum. Whatever effect, if any, the above quoted provision relied upon by the respondent might have in another taxable year, we are satisfied from the record before us that it has no effect whatever in the present taxable year. Since the entire amount of $257.88 in question was computed at 3½ per centum it is clear that this amount did not contain any so-called "additional interest" to be determined by petitioner's directors and to be apportioned from petitioner's surplus earnings for the preceding year. It is, therefore, our opinion that petitioner is entitled to deduct as interest that part

of the $257.88 that was actually paid out during the taxable year. The stipulation says that the amount paid out was $202.90. *Massachusetts Mutual Life Insurance Co.* v. *United States, supra; Great Southern Life Insurance Co., supra.*

We, therefore, hold that in connection with the type of trust agreement attached to the stipulation as exhibit "J" petitioner is entitled under section 203 (a) (8) of the Revenue Act of 1932 to deduct $202.90 as interest paid during the taxable year on its indebtedness. Cf. *Edith M. Kinnear*, 20 B. T. A. 718.

The deficiency should be redetermined in accordance with this report.

*Decision will be entered under Rule 50.*