## COMMISSIONER OF INTERNAL REVE-
## NUE v. PAN–AMERICAN LIFE INS.
## CO.

## PAN–AMERICAN LIFE INS. CO. v. COM-
## MISSIONER OF INTERNAL REVE-
## NUE.

### No. 9175.

Circuit Court of Appeals, Fifth Circuit.

April 20, 1940.

Edward H. Horton and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

Eugene J. McGivney, Edwin J. Prinz, and Solomon S. Goldman, all of New Orleans, La., for Pan-American Life Ins. Co.

John W. Townsend, of Washington, D. C., for amicus curiae.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

These two petitions for review were consolidated for purposes of the hearing, but the questions presented are distinct, and will be dealt with separately in this opinion.

In the first case, the question is whether reserves required by state law to be maintained by life insurance companies for the payment of incurred disability benefits are reserves required by law within the meaning of Section 203 (a) (2) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Code, § 203(a) (2). The board held that they were. Pan-American Life Ins. Co. v. Commissioner of Internal Revenue, 38 B.T.A. 1430.

The taxpayer is an insurance company incorporated under the laws of Louisiana. During the tax year 1933, it did business in Louisiana, Oklahoma, Indiana, and Illinois. More than fifty per centum of its total reserve funds was held for the fulfillment of its life-insurance and annuity contracts. Some of its policies provided for the waiver of premiums in event of the total and permanent disability of the insured, so long as such disability continued; others provided for the payment of monthly disability bene-

fits. The laws of Oklahoma and Illinois required the insurer to maintain reserves for unpaid and unresisted claims incurred under these disability provisions. The taxpayer maintained such reserves computed according to a standard method. They were established only for the policies under which the insured had sustained total and permanent disability, and the continuance of benefits was subject to termination either by death or recovery from disability. In its tax return, the insurer computed the mean of such reserve funds held at the beginning and end of the taxable year, and deducted three and three-fourths per centum thereof, which the commissioner disallowed.

Section 201 (a) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Code § 201(a), defines a life insurance company to be a company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which, held for the fulfillment of such contracts, comprised more than fifty per centum of its total reserve funds.

This question has been before the Board of Tax Appeals four times, and before the Court of Claims once.[1] Those portions of the law which are applicable to this case were originally enacted in 1921, and have been re-enacted in each succeeding revenue act, including that of 1939. The administrative interpretation, as evidenced by Treasury Regulation 62, Art. 681, promulgated in 1922, and unchanged in this aspect until 1935, provided that reserves for amounts incurred but not due for total and permanent disability benefits were considered reserves as contemplated by the law. No life insurance company's right to the deduction was ever protested until 1934, when, after the decision of the Court of Claims in the case of Continental Assurance Company v. United States, 8 F.Supp. 474, the Commissioner concluded that such deductions should not be allowed. It will thus be seen that for thirteen years, including 1933, the administrative interpretation supported the taxpayer's contention. During this period, the Congress re-enacted the provisions without change, indicating that the administrative interpretation was not

[1] Equitable Life Assurance Society v. Commissioner, 33 B.T.A. 708; Monarch Life Ins. Co. v. Commissioner, 38 B.T.A. 716; Pan American Life Ins. Co. v. Commissioner, supra; Oregon Mutual Life Ins. Co. v. Commissioner, 39 B.T.A. 1239 (Jan. 4, 1939); New World Life Ins. Co. v. United States, Ct.Cl., 26 F.Supp. 444.

inconsistent with the legislative intent.[2] The attempt of the commissioner to apply 1935 treasury regulations to tax returns made for the year 1933 falls within the prohibition against retroactive application mentioned in Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536.

■ Since the applicable provisions of the revenue act specifically define life insurance companies to include those issuing casualty contracts, and permit the reserve funds required by law held by such companies to be partially deductible, and since there is no express provision excluding casualty reserves from the coverage of the deduction, the most that can be said in favor of the construction urged upon us by the commissioner, in the light of the administrative interpretation, is that the statute is sufficiently ambiguous to give rise to a reasonable doubt as to its meaning, which we are required to resolve in favor of the taxpayer.[3]

The nature of the reserve in dispute is persuasive to the conclusion we have reached. Incurred disability reserves were created only after the disability had arisen. They were not fixed obligations. They were payable only in the future, and were contingent upon the continuance of both life and disability. Not being completely accrued, the extent of the probable liability thereunder was computed, and the amount of the reserve created was fixed, by tables of probability based upon approved rates of termination of such liability. The method of computation so employed is wholly consistent with that used for establishing amounts of premiums and reserves for ordinary life-insurance and annuity contracts, and is wholly inconsistent with reserves created to defray accrued and definite liabilities payable in the future. This is the distinguishing feature between the case at bar and those relied upon by the commissioner, which dealt with the reserves for the payment of accrued obligations for fixed amounts created by contract. The latter are mere solvency reserves having no relation to true insurance risks.[4]

The purpose of Congress in allowing these deductions is obvious. By the provision enacted in 1921, life insurance companies for the first time were taxed upon their investment income only, and no deduction was allowed for claims paid to policy holders or for net additions made to reserve funds, as insurance companies classed "other than life" were permitted by the act to do. Apparently, Congress recognized that life insurance companies were required by law to maintain numerous reserves comprising a large proportion of their total assets. Being thus deprived of potential investment returns, and being required to credit such reserves with compound interest annually, the deduction was allowed as a necessary compensation for earnings foregone by compliance with the law.[5] Due to its classification for income tax purposes as a life insurance company, the taxpayer is denied the right to claim the deductions on its casualty reserves to which casualty companies are entitled. Therefore, to deny it the deduction here claimed would have the unjust effect of declaring these reserves to be under the law for the penalties imposed by it, and outside the law for the benefits flowing from it.

■ A further inconsistency in the position we are urged to take is evidenced by the provision of Section 203 (a) (2) of the Revenue Act of 1932, which expressly permits percentage deductions upon casualty reserves held by life insurance companies on certain types of policies, even though not required by law. It is unreasonable to believe that Congress would discriminate between companies doing the same kind of casualty business, as the interpretation would require, when the conclusion we have reached is entirely in harmony with the theory of equal benefits. Our conclusion is that the reserve for incurred disability benefits held by the taxpayer was a fund re-

2 United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893.

3 Old Colony Trust Company v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Hardware Dealers' Mut. Fire Ins. Co. v. Glidden Co., 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214; White v. Aronson, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. 20.

4 McCoach v. Insurance Company of North America, 244 U.S. 585, 37 S.Ct. 709, 61 L.Ed. 1333; United States v. Boston Insurance Company, 269 U.S. 197, 46 S.Ct. 97, 70 L.Ed. 232; Helvering v. Inter-Mountain Life Insurance Company, 294 U.S. 686, 55 S.Ct. 572, 79 L.Ed. 1227; Helvering v. Illinois Insurance Company, 299 U.S. 88, 57 S.Ct. 63, 81 L.Ed. 56.

5 Cf. Mass. Mutual Life Ins. Co. v. United States, Ct.Cl., 56 F.2d 897.

quired by law within the meaning of the statute.

The second petition for review, wherein the insurance company is the petitioner, involves the right of the taxpayer to deduct interest credited to two types of matured ordinary life policies which, under an option exercised by the insured prior to his death, were payable in installments. Under the terms of these policies, the election of an option by the insured precludes any selection by the beneficiary, and, in each of the policies involved in this case, the insured had so elected and the policies had matured. To provide for an increase in the amounts payable under this installment option, the insurer credited to these matured life policies during the taxable year additional sums of money, which were deducted in the return as interest paid on indebtedness. These deductions are claimed to be authorized by Section 203 (a) (8), 26 U.S. C.A.Int.Rev.Acts, page 548. The commissioner insists that the board was correct in finding that sums so credited to funds held for the liquidation of such contracts, even though computed at a specified rate of interest, were not interest paid upon indebtedness within the meaning of the statute. The issue turns upon the fact that the election to have the proceeds paid in installments, rather than in a lump sum, was made by the insured during his lifetime, and could not be altered or commuted after his death by the beneficiary.

The first type of policy provided for payment of part in a lump sum, upon proof of death, and the balance in monthly installments for 240 months. The total of these payments equalled the face value of the policy. As an option, the insured might elect a smaller sum (called the commuted value) payable at once in lieu of the settlement providing for monthly installments.

The second type of policy provided for the payment of a lump sum, upon proof of death, unless the insured, during his lifetime, elected to have the proceeds paid in equal annual installments over a period of from five to twenty-five years, in which event the total amount paid would exceed the lump-sum settlement.

 Under each of these policies, the installment options were specified in definite amounts, and were a part of the contract for which the insured paid his premiums. By election of the installment option, the amounts specified to be paid thereunder matured, upon his death, as the indebtedness owed by the company upon the policy. When the policies matured, the obligation upon the insurer was to pay the total amount specified by the installment terms. It is immaterial that interest comprised a part of the indebtedness, since the statute permits interest to be deducted only when paid or accrued on its indebtedness. [6] Interest, as used in the statute, means the premium paid for the use or forbearance of money. [7] Here, the beneficiaries were the creditors to whom the insurer was pledged to pay fixed sums at stated intervals. [8] The amount of the indebtedness was fixed upon the death of the insured, and the obligation to pay it was deferred, but the amount to be paid was not thereby increased. There was no forbearance from use, or permission to use, on the part of the beneficiaries, because at no time did they have the right to the use or possession of the money or the power to contract to forbear, except as the periodic installment payments became due. Upon the death of insured, the principal and interest were merged to create the indebtedness, upon which no interest accrued.

The decision of the Board of Tax Appeals in each instance is affirmed.

[6] Penn Mutual Life Insurance Company v. Commissioner, 3 Cir., 92 F.2d 962.

[7] Deputy v. Dupont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. —— (Jan. 8, 1940).

[8] Duffy v. Mutual Benefit Life Insurance Company, 272 U.S. 613, 47 S.Ct. 205, 71 L.Ed. 439.