STANDARD INDUSTRIAL LIFE INSURANCE CO. OF LOUISIANA, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99842. Promulgated October 18, 1940.

*Ed. J. DeVerges, C. P. A.*, for the petitioner.
*Donald P. Moyers, Esq.*, for the respondent.

### OPINION.

ARUNDELL: The issue before us is whether the insurance reserves maintained by the petitioner during the taxable years were adequate to bring petitioner within the definition of a life insurance company specified in sections 201 (a) and 203 (a) (2) of the Revenue Act of 1936 and articles 201 (a)–1 and 203 (a) (2)–1 of Regulations 94,[1]

---

[1] SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

(a) DEFINITION.—When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

\*     \*     \*     \*     \*     \*     \*

(2) RESERVE FUNDS.—An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. Life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, shall be allowed, in addition to the above, a deduction of 3¾ per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only \* \* \*.

ART. 201 (a)–1. *Life insurance companies: Definition.*—The term "life insurance company" as used in Title I is defined in section 201 (a). In determining whether an insurance company is a "life insurance company" as defined in section 201 (a), no reserve shall be regarded as held for the fulfillment of an insurance contract unless it conforms to the definition of "reserve" contained in article 203 (a) (2)–1.

ART. 203 (a) (2)–1. *Reserve funds.*—In general, the reserve contemplated is a sum of money, variously computed or estimated, which, with accretions from interest, is set aside (reserved) as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. It must be required either by express statutory provisions or by rules and regulations of the insurance department of a State, Territory, or the District of Columbia when promulgated in the exercise of a power conferred by statute \* \* \*.

and thus to entitle it to report its net income under section 203 of that act. Section 201, as far as material here, provides that life insurance companies are those issuing life insurance contracts and whose reserve funds for the fulfillment of such contracts are more than 50 percent of the total reserve funds. In addition, the requirement is added by section 203 (a) (2) and article 201 (a)–1 that the reserves which are so held must be those which are prescribed by state law. These provisions of the regulations have been approved and followed in numerous instances and no question is now made of their validity. See *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686; *Helvering* v. *Illinois Life Insurance Co.*, 299 U. S. 88.

The petitioner was engaged in the business of issuing life insurance contracts. Such reserves as it had were held in whole for the fulfillment of those contracts. So far the petitioner meets the requirements of the statute. The narrow point of contest is whether such reserves, which admittedly were below the amounts required on the basis of an actuarial computation, were reserves "required either by express statutory provision or by rules and regulations of the insurance department of a state."

The statutes of Louisiana provide that every life insurance company shall make an annual report to the Secretary of State, who shall thereupon make a valuation of the policies and shall ascertain the reinsurance reserves and surplus of each company. The statute (Acts 1898, No. 114 § 2; Dart, sec. 4054) further provides:

All such valuations shall be in accordance with the terms of the respective contracts on the net premium basis.

The legal minimum standard for such valuation of policies, including industrial life policies, shall be the American Experience Table of Mortality with interest at four (4) per cent per annum * * *.

The statute in effect prior to 1936 prohibited the payment of dividends or payments to policy holders unless assets exceeded liabilities, including reserves computed by use of "recombined experience table of mortality." Acts 1898, § 3; Wolff's Code, 1920, p. 967. The same section further provided:

* * * but for all purposes the reinsurance reserve of every such company shall be computed upon the basis of the so-called American Experience Table of Mortality with interest at four (4) per cent per annum.

The provision just quoted did not by its terms specifically apply to industrial insurance companies, but was contained in the title dealing with reports of life insurance companies. The provisions relating to life insurance companies have, however, been held to apply to industrial life insurance companies. See *McBride* v. *Acme Industrial Life Insurance Society*, 154 So. 741; *Smith* v. *Unity Industrial Life Insurance Co.*, 184 So. 368. In the *Unity* case the Court of Appeal of

Louisiana considered the above quoted section 3 of the Acts of 1898 and said:

The above language is explicit and we think that it clearly evinces the intention of the Legislature that, for every purpose (except for the payment of dividends), the reinsurance reserve must be computed upon the American Experience Table of Mortality.

We also experience no difficulty in concluding that the Legislature, in speaking of "reinsurance reserve" in Act No. 114 of 1898 and in prohibiting the forfeiture of the "surrender value" of the policy in Act No. 193 of 1906, were referring to the same thing and that the terms are synonymous in that they apply solely to the actual net value of the policy.

As the statutes of Louisiana were amended in 1936 so as to remove the provision permitting reserves for dividend purposes to be computed in a manner different from reserves for other purposes, the exception noted in the *Unity* case no longer applies and reserves for every purpose must be at least equal to an amount computed on the American Experience Table of Mortality. Speaking specifically of policy reserves, the Court of Appeal of Louisiana, in *Williams* v. *Peoples Industrial Life Insurance Co.*, 191 So. 331, held:

In computing policy reserves, an insurer may adopt any standard provided it does not unfairly discriminate between policyholders and further provided that the resultant reserve is not less than would have been produced by the use of the American Experience Table of Mortality at four percent interest.

We read the cases quoted as meaning that under the Louisiana statutes the reserves required of an industrial life insurance company, for all purposes, must be at least equal to those computed on the American Experience Table of Mortality.[2] Such reserves then are the reserves required by law within the meaning of the taxing statutes and the respondent's regulations.

The petitioner's view is that when the Secretary of State, as *ex officio* insurance commissioner, authorized it to do business upon the setting up of certain amounts of reserves, then such reserves were those required by rules and regulations of the insurance department, and so they come within the respondent's regulations. We can not subscribe to this view, even passing the fact that the actual reserves set up by the petitioner fell somewhat below the amounts prescribed by the insurance commissioner. There are in evidence communications from the insurance department of the office of the Secretary of State of Louisiana from which it clearly appears that the reserves directed to be carried in 1936 and 1937 were solvency reserves rather than reserves attributable to life insurance elements. From this evidence it appears that prior to 1936 industrial life insurance companies in Louisiana had contended that they were not subject

---

[2] There is a provision in section 11, Act 148 of 1936, to the effect that in computing paid up or extended insurance the Standard Industrial Table of Mortality may be used. The relevancy of that provision is not shown.

to the reserves requirements exacted of other life insurance companies in Louisiana and in consequence maintained no reserves under the state statute. In that year, by decision of the State Supreme Court and by action of the Legislature, this contention was overruled and the companies were then for the first time faced with the necessity of accumulating reserves to meet these liabilities for which no provision had been made theretofore. In the words of the statement heretofore referred to, the Secretary of State was faced with this problem:

* * * The statutes of the State did not require that those reserves be accumulated as a condition precedent to the granting of a certificate of authority of the company. The statutes did require that the companies remain solvent and the Secretary of State was charged with the duty of seeing that they were solvent. To consider the reserves as computed under Act 114 of 1898, an absolute liability in determining the company's solvency would have rendered practically every industrial insurance company of Louisiana insolvent and would have resulted in their destruction with great loss to thousands of policyholders.

The Secretary of State, therefore, ruled that only a certain portion of the reserves as computed under Act 114 of 1898 would be taken as an absolute liability of the company in determining their solvency. * * *

Reserves which are thus established are wholly arbitrary in amount and have no significant relation that we have been shown either to the life insurance elements of the policies or to the mortality tables. The duty of the Secretary of State in this instance and the purpose of the reserves thus fixed by him are to insure the solvency of the subject company. They are therefore not life insurance reserves but are more in the nature of solvency reserves; nor is this conclusion affected by the fact that they were computed in terms of percentages of the reserves required under the mortality tables. It follows that the reserves set up by petitioner to meet the requirements established by the Secretary of State were not the life insurance reserves required by law, and, as mere reserves for solvency, do not come within the statute. See *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686; *Helvering* v. *Illinois Life Insurance Co.*, 299 U. S. 88.

We must accordingly hold, in view of its failure to maintain adequate reserves, that petitioner is not a life insurance company within the meaning of the revenue act.

*Decision will be entered for respondent.*