Swift & Company Employes Benefit Association, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.*

Docket No. 107838.   Promulgated November 10, 1942.

*Prior to October 22, 1942, this report was approved for promulgation.

*Maurice Weigle, Esq.*, for the petitioner.
*D. A. Taylor, Esq.*, for the respondent.

OPINION.

LEECH: The first issue, involving the statute of limitations, is necessarily decided by the conclusion reached on the second issue as to whether petitioner is taxable as a life insurance company under section 203. The notice of deficiency is conceded to have been mailed more than three years after the date of each return, but within the five-year period which applies under section 275 (c) if its gross income was understated to the extent of 25 percent. Petitioner computed its net income under section 203 and consequently did not include in gross income its premium receipts. It is apparent, and the fact is not contested, that if this was incorrect and the computation should have been under section 204 or section 207, with such receipts included, then petitioner has omitted an amount largely in excess of 25 percent and the notice of deficiency was timely. We accordingly pass to the second issue.

Petitioner is manifestly an insurance company. Respondent concedes this in his classification of it for taxation under section 204 as an insurance company other than life or mutual. It is also clear

that petitioner issues life insurance policies, including those combining life, health, and accident insurance and issued on the weekly payment plan. Moreover, we are convinced from the record that petitioner maintains a reserve for its life risks, which it computes actuarially on the American Experience Table of Mortality, with interest at 3½ percent, and that this reserve in the two taxable years was more than 50 percent of its total reserves. The existence of these factors would necessarily bring it within the literal wording of the definition of a life insurance company carried in section 201 (a).

Respondent, however, points to the fact that petitioner is not subject to the insurance laws of the State of Illinois, is not required by those laws to maintain a reserve, and its business is in no way supervised or controlled by the director of insurance of that state. He contends that the reserve as maintained by petitioner is a purely voluntary reserve not required by law and that the term "reserve funds," appearing in section 201 (a) of the applicable acts, has the same meaning as the term "reserve funds required by law" as that term is used in section 203 (a) (2) of those acts. He argues then that such reserve funds are limited to those required either by express statutory provision or by rules and regulations of the insurance department of a state, territory, or the District of Columbia when promulgated in the exercise of a power conferred by statute. Respondent's position is based upon the express wording of his interpretation of sections 201 and 203 of the acts in question, by articles 201 (a)–1 and 203 (a) (2)–1 of his Regulations 86 and 94.

Petitioner argues that, although the regulations cited so construe sections 201 (a) and 203 (a) (2), such construction is unreasonable and arbitrary. It insists that the intent of Congress in enacting the cited sections was to tax companies carrying on a life insurance business and maintaining actuarial reserves to meet its life insurance risks when such reserves are in excess of its other reserve funds. It is argued that the term "reserve funds required by law" is used to designate merely the particular type or character of reserve which is recognized as a life insurance reserve under the general law of insurance and that the actuarial reserve which it maintains complies with that requirement. It is urged that to hold otherwise is to deny petitioner the benefit of a provision of the Federal statutes merely on the ground that the state has not seen fit to apply certain regulations to it, even though its business and its reserves are identical in character and computed upon the same basis as other companies subject to state supervision and consequently granted that privilege.

The definition of a life insurance company as set out in section 201 (a) and the provision for computation of its tax liability as provided in section 203 of the applicable revenue acts were first carried in the

Revenue Act of 1921. They have appeared with no material change in each revenue act since that time. The respondent's regulations construing these acts have been the same and have interpreted the language of those acts to have the meaning to which he here gives effect in denying the petitioner classification as a life insurance company. Aside from the weight to be given this consistent administrative interpretation by reason of repeated reenactment of these sections, the regulations in question have received definite judicial approval. *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686; *Helvering* v. *Illinois Life Insurance Co.*, 299 U. S. 88. The decisions of this Board have approved these regulations as a correct interpretation. *Standard Industrial Life Insurance Co.*, 42 B. T. A. 1011; *Independent Life & Accident Insurance Co.*, 47 B. T. A. 894. We hold that petitioner may not be classified as a life insurance company within the definition of section 201 (a). The decision of this question concludes petitioner on the first issue.

Petitioner's contention on the third issue is that if not entitled to classification as a life insurance company it is entitled to classification as a mutual insurance company. This position has no merit. The characteristics of its organization are not those of a mutual insurance company. Its members paid fixed and level premiums and not contributions to a reserve in which they had an interest and a right to participate beyond the specific insurance risk for which petitioner is obligated. It is apparent that they stand in relation to petitioner upon the same basis as that of a policyholder who obtains nothing more than insurance for his premium payment. The mere fact that the individual members of petitioner have some voice in the management of its business through an advisory committee selected from the membership certainly does not change that condition. *West Penn Benefit Association* v. *United States*, 44 Fed. Supp. 575.

Moreover, petitioner, if taxable as an insurance company, must come within the three general classes as set out in sections 201, 204, and 207 of the Revenue Acts of 1934 and 1936. We have held that petitioner is not within section 201, since it is not within the definition therein of a life insurance company. It is manifest that it does not come within section 207 as a mutual insurance company other than life, because that classification applies to companies engaged in an insurance business different in character from life insurance, whereas petitioner is unquestionably engaged in the life insurance business, although not a life insurance company under section 201.

It necessarily follows that petitioner has been classified correctly by respondent and is taxable under section 204 as an insurance company other than life or mutual. This brings us to the question as to

whether respondent, in computing gross income under that section, has committed error as petitioner contends.

In computing the deficiencies for each taxable year respondent has included in petitioner's gross income, premiums paid by its members for protection under a group policy of insurance issued by the Aetna Life Insurance Co. These premiums were collected by petitioner from its members and paid to that company. These premium collections were insufficient in each taxable year to meet the total cost of the group policy and the deficit was, by agreement, contributed by Swift & Co. Respondent also included this contribution in income of petitioner. The propriety of this action is the first branch of the fourth issue.

Petitioner assumed no liability whatever to its members under this group policy. It merely acted as agent for them in contracting for the policy and collecting and transmitting to the Aetna Life Insurance Co. these collections in payment of the group premium. It is quite evident that the amounts collected by petitioner from its members and from Swift & Co., the premium on the group policy, did not constitute income to petitioner. It was only the agent or conduit through which these funds passed to the Aetna Life Insurance Co., which was the insurer. We hold that these amounts were improperly included by respondent in petitioner's gross income in each year. See *Carling Holding Co.*, 41 B. T. A. 493; *Abram Sons' Realty Corporation*, 40 B. T. A. 653.

Petitioner also contends, in this issue, that respondent has erroneously failed to compute unearned premiums under section 204 (b) (5) and to deduct these in determining gross income under section 204 (b) (1).

Respondent answers that there are in fact no unearned premiums held by petitioner; that the amount deducted each week from the pay of each member merely represented payment for protection during the preceding week. This position, we think, is untenable in view of the fact that petitioner's policies were issued upon the level premium plan, the basis of which is that in the earlier policy years an excess premium is collected which exceeds the current cost of the insurance risk and is held or reserved against the period when, at an advanced age, such cost exceeds the premium payment.

Respondent argues, however, that petitioner does not actually maintain a reserve against its life insurance risks. But this contention can not be reconciled with the evidence. Not only has the testimony of competent and informed witnesses established the fact of the maintenance of the reserve, but it is shown that petitioner semiannually computed such reserve on the basis of the American Experience Table of Mortality, with interest added at the required rate and that the reserve held to meet its life insurance obligations was in

the amount so computed. Respondent insists that the account on petitioner's books entitled "reserve" was no more than a surplus account, since it was composed of the excess of its total accumulated receipts over its expenditures in operation. We do not agree. It is not a surplus account but is definitely held for the protection of its insurance contracts. Respondent overlooks the fact that petitioner is a nonstock company in which there are no distributions of profits and no necessity, therefore, to segregate and establish a true surplus account.

The increase in each of the taxable years in petitioner's actuarially computed reserve against its life insurance risks constitutes its unearned premiums. These increases have been found as facts. Petitioner is entitled to their deduction in each year in determining gross income and the computation of the net income upon which petitioner is taxable. *Travelers Equitable Insurance Co.*, 22 B. T. A. 784.

Respondent's request for an increase in deficiencies asserted by his amended answer appears to be upon the theory that if under our decision the amount of the premiums collected by petitioner from its members, including the contribution of Swift & Co. for payment of the premium on the group policy issued by the Aetna Life Insurance Co., is eliminated from petitioner's income, there should be a proportionate decrease in the allowance for expenses of petitioner, upon the ground that some portion of these expenses is allocable to the servicing of that insurance and consequently does not constitute an expense deductible by petitioner. Respondent has the burden on this issue. There is no evidence that the collection and payment of these funds to the Aetna Life Insurance Co. entailed any expense to petitioner over and above that regularly borne in connection with the business from which its income arises. Moreover, it may be that were there some expense to petitioner in connection with the group policy it would constitute a reasonable and necessary expense to petitioner and would be deductible as such. The group insurance in question was available only to petitioner's members and the right to participate under this policy gave an added value to such membership, reflected directly in a specific benefit to petitioner.

*Decision will be entered under Rule 50.*