*Decision will be entered under Rule 50.*

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 89294, 93805. Promulgated April 29, 1941.

294

*Campbell E. Locke, Esq., John L. Grant, Esq.,* and *Donald M. Dunn, Esq.,* for the petitioner.

*Thomas H. Lewis, Jr., Esq.,* and *L. A. Spalding, Jr., Esq.,* for the respondent.

### OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies for 1933 and 1934 of $267,677.39 and $299,461.89, respectively. The respondent claims additional deficiencies for each of the taxable years.

The questions in issue are as follows:

(1) Is the petitioner entitled to a reserve deduction for its "additional reserve on non-cancellable accident and health policies"? (The respondent in his answer, as amended, asserts that the allowance of this deduction for 1934 was in error.)

(2) Is the petitioner entitled to a reserve deduction for a reserve called "unpaid and unresisted accident and health claims"?

(3) Is the petitioner entitled to a reserve deduction for its reserve for "unearned accident and health premiums"?

(4) Is the petitioner entitled to a reserve deduction for its reserve called "total and permanent disability benefits, active lives" (sometimes called "extra-reserve for total permanent disability benefits")? (The respondent in his answer, as amended, asserts that the allowance of this deduction for 1933 was in error.)

(5) Is the petitioner entitled to a reserve deduction for its reserve called "total and permanent disability benefits, disabled lives" (sometimes called "present-value of amounts incurred but not yet due for total and permanent disability benefits")?

(6) Is the petitioner entitled to a reserve deduction for its "extra reserve for additional accidental death benefits"? (The respondent in his answer, as amended, asserts that the allowance of this deduction for 1933 was in error.)

(7) Is the petitioner entitled to a reserve deduction for its reserve for "supplementary contracts not involving life contingencies"?

(8) Is the petitioner entitled to a deduction (as interest paid on indebtedness) for the "guaranteed" interest which, during the respective taxable years, accrued and was paid by petitioner on its supplementary contracts not involving life contingencies? (The respondent in his answer, as amended, asserts that the allowance of this deduction for 1933 and 1934 was in error. The petitioner claims this deduction only as an alternative to the reserve deduction involved in issue 7.)

(9) Is the petitioner entitled to a deduction (as interest paid on indebtedness) for "guaranteed" interest which it accrued in prior years on its supplementary contracts not involving life contingencies and which was paid by the petitioner during the respective taxable years? (Petitioner appeals from the respondent's determination of deficiencies for 1933 and 1934, which were computed without allowing this deduction, but the petitioner claims this deduction only as an alternative to the reserve deduction involved in issue 7.)

(10) Is the petitioner entitled to a deduction (as interest paid on indebtedness) for "excess interest dividends" which during the respective taxable years accrued and were paid by the petitioner on its supplementary contracts not involving life contingencies? (Petitioner appeals from the respondent's determination of deficiencies for 1933 and 1934, which were computed without allowing this deduction, but the petitioner claims this deduction only as an alternative to the reserve deduction involved in issue 7.)

(11) Is the petitioner entitled to a deduction (as interest paid on indebtedness) for the amount of interest which during the respective taxable years it credited to funds which it held on demand and which (together with such funds) it applied to the payment of premiums becoming due on its policies, all in accordance with the agreements under which such funds were held?

(12) Is the petitioner entitled to a deduction for depreciation on the improvements on the farms which it owned during the respective taxable years? (The respondent concedes this issue and agrees that the depreciation shall be taken upon the stipulated costs of the improvements on the farms at the stipulated rates.)

(13) Is the petitioner entitled to a deduction for depreciation on its home office building in respect of the architect's fees, contractor's fees, and other general costs not allocated to the various component elements of the building?

These proceedings have been submitted to the Board upon a signed stipulation of facts, a supplementary stipulation of facts, and exhibits, all of which are made a part of our findings by reference.

At all times material herein the petitioner was a mutual life insurance company; a corporation organized and existing under and by virtue of the laws of the State of New York, with its principal office and place of business in the Borough of Manhattan, City, County, and State of New York, and engaged in the business of issuing and selling life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), and accident and health insurance contracts.

From some time prior to the taxable year 1933 continuously to the present time the petitioner has been duly authorized in every state of the United States, except Texas, to transact the business of issuing life insurance and annuity contracts and has been transacting that business in each of such states, except Texas, pursuant to the laws thereof. During this entire time more than 50 percentum of the petitioner's total reserve funds have been held for the fulfillment of its life insurance and annuity contracts.

For convenience of treatment the findings of fact and opinion applicable to groups of issues raised will be set forth in order.

### Issues 1–6.

FACTS.—During 1933 and 1934 the petitioner had outstanding life insurance and annuity contracts (including contracts of combined life, health and accident insurance) and accident and health insurance policies. The six reserves covered by the first six issues in these proceedings were maintained and computed as required by the laws of the State of New York and by the rules and regulations of the insurance commissioner of that state, and also as required by the laws of other states in which the petitioner did business, and the rules and regulations of the insurance commissioners of such other states; and, as so required, the petitioner at all times held admitted assets sufficient to provide for these and for all other reserves and liabilities.

OPINION.—The above reserves have received the consideration of the Board in the following cases:

*Equitable Life Assurance Society of the United States*, 33 B. T. A. 708;
*Monarch Life Insurance Co.*, 38 B. T. A. 716;
*Pan-American Life Insurance Co.*, 38 B. T. A. 1430;
*Oregon Mutual Life Insurance Co.* (Memorandum Opinion entered Jan. 4, 1939), Docket Nos. 85182 and 88299.

In all the Board has held that the reserves were reserves required by law within the meaning of section 203 (a) (2) of the Revenue Acts of 1932 and 1934. Our decision in *Monarch Life Insurance Co.*, *supra*, was affirmed (C. C. A., 1st Cir.), 114 Fed. (2d) 314, in *Pan-American Life Insurance Co.*, *supra* (C. C. A., 5th Cir.), 111 Fed. (2d) 366, which was in turn affirmed by the Supreme Court, 311 U. S. 272, and in *Oregon Mutual Life Insurance Co.*, *supra*, 112 Fed. (2d) 468; affd., 311 U. S. 267.

In support of his argument that these reserve funds are not "reserve funds required by law" within the meaning of section 203 (a) (2) of the Revenue Acts of 1932 and 1934, the respondent cites *New World Insurance Co.* v. *United States*, 26 Fed. Supp. 444. The Supreme Court affirmed the decision of the lower court in that case, with the following comment:

* * * the views expressed on the second question considered by the Court of Claims as to the right of deduction on account of insurance reserves not being an essential basis for the judgment and being contrary to *Helvering* v. *Oregon Mutual Life Insurance Co.* No. 564, decided this day.

Upon the authority of the above cited cases the contentions of the petitioner that these reserves are "reserve funds required by law" within the meaning of section 203 (a) (2) of the Revenue Acts of 1932 and 1934 are sustained.

### *Issues 7, 8, 9, 10.*

FACTS.—The facts relating to these issues have been stipulated as follows:

#### XXXI

During and prior to the calendar years 1933 and 1934, the taxpayer issued life insurance policies which gave to the insured and in some cases to the beneficiary the right to require the taxpayer to apply the net sum due under the policy upon its maturity, in accordance with one of the optional modes of settlement set up in Stipulation Exhibit D attached hereto and made a part hereof. Options exercised under provisions 1, 2 or 4 of Stipulation Exhibit D are generally known as "Supplementary Contracts not Involving Life Contingencies" and are so referred to in these proceedings. To provide for the payment of life policies which had matured and were payable during 1933 and subsequent years under these "Supplementary Contracts not Involving Life Contingencies" the petitioner carried on its books a liability (which the petitioner contends is a reserve liability) named "Present Value of Amounts not yet Due on Supplementary

Contracts not Involving Life Contingencies", in the following respective amounts at the beginning and end of the calendar years 1933 and 1934:

| Year | Beginning of Year | End of Year |
|------|-------------------|-------------|
| 1933 | $34, 806, 201 | $42, 326, 682 |
| 1934 | 42, 326, 682 | 53, 942, 995 |

The mean of these amounts for 1933 is $38,566,441.50 of which 48% was held in respect of supplementary contracts arising from options exercised by the insured during his or her lifetime, and 52% was held in respect of supplementary contracts arising from options exercised by the beneficiaries after the policies involved had matured.

The mean of these amounts for 1934 is $48,134,838.50 of which 47% was held in respect of supplementary contracts arising from options exercised by the insured during his or her lifetime, and 53% was held in respect of supplementary contracts arising from options exercised by the beneficiaries after the policies involved had matured.

This liability carried on petitioner's books was an amount which, if maintained with annual interest increments, would exactly equal petitioner's obligations under the Supplementary Contracts Not Involving Life Contingencies. The obligations arising under these option contracts were absolute obligations of the petitioner and were not in any sense contingent upon the happening of future events. For the purpose of providing for these obligations, the taxpayer was required to accumulate and maintain this liability by the statutes of the states in which it was then doing business and by the rulings of state officials made pursuant to authority conferred upon them by such statutes, and as so required the petitioner at all times held admitted assets sufficient to provide for this and all other reserves and/or liabilities. In computing the taxes involved in these proceedings, the respondent determined that the liability called "Present Value of Amounts not yet Due on Supplementary Contracts not Involving Life Contingencies" and that portion of petitioner's admitted assets held to provide therefor, did not constitute a reserve fund within the meaning of the Revenue Acts of 1932 and 1934 and allowed no deduction in respect to it under section 203 (a) (2) of said Revenue Acts, but did allow deductions under section 203 (a) (8) of those Acts for the "guaranteed interest" paid by the petitioner on these "Supplementary Contracts not Involving Life Contingencies", which accrued during the taxable year and was paid in that year. The deduction allowed by the respondent for such "guaranteed interest" accrued and paid during the year was $1,118,594.00 for 1933 and $1,315,000.00 for the year 1934.

The petitioner's liability under its Supplementary Contracts Not Involving Life Contingencies named "Present Value of Amounts Not Yet Due on Supplementary Contracts Not Involving Life Contingencies" carried on its books as stated in paragraph XXXI (of the Stipulation of Facts) was an amount which, if maintained with annual interest increments, would exactly equal petitioner's obligations under such contracts in respect of amounts not yet due at the time of valuation.

Of the mean of the "Present Value of Amounts Not Yet Due on Supplementary Contracts Not Involving Life Contingencies" held by the petitioner at the beginning and end of each of the taxable years, the following percentages were the

present values of amounts not yet due under the different options set out in Stipulation Exhibit D exercised as indicated:

|  | 1933 | 1934 |
|---|---|---|
| Option 1 exercised by insured | 27.52% | 28.20% |
| " 2 " " " | 15.36% | 14.10% |
| " 4 " " " | 5.12% | 4.70% |
| " 1 " " beneficiary | 42.99% | 44.52% |
| " 2 " " " | 6.76% | 6.36% |
| " 4 " " " | 2.25% | 2.12% |
| Total | 100.00% | 100.00% |

## XXXII

Of the $1,118,594.00 allowed as a deduction for such "guaranteed interest" paid during the year 1933, $538,984.00, was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the insured during his or her lifetime and $579,610.00 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the beneficiaries after the policies involved had matured. Of the $1,315,000.00 allowed as a deduction for such "guaranteed interest" paid during the year 1934, $624,097.00 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the insured during his or her lifetime and $690,903.00 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the beneficiaries after the policies involved had matured. In these proceedings the respondent maintains that he erred in so far as he allowed deductions with respect to the "guaranteed interest." The term "guaranteed interest" is herein used in the same sense as it is used in the Supplementary Contracts set out in the Stipulation Exhibit D.

The "guaranteed interest" which was paid by the petitioner in the year it accrued on petitioner's Supplementary Contracts Not Involving Life Contingencies, accrued and was paid as follows under the different options set out in Stipulation Exhibit D, exercised as indicated:

|  | 1933 | 1934 |
|---|---|---|
| Option 1 exercised by insured | $307,007 | $372,894 |
| " 2 " " " | 173,983 | 188,402 |
| " 4 " " " | 57,994 | 62,801 |
| " 1 " " beneficiary | 480,191 | 583,244 |
| " 2 " " " | 74,564 | 80,744 |
| " 4 " " " | 24,855 | 26,915 |
| Total | $1,118,594 | $1,315,000 |

## XXXIII

The petitioner paid "guaranteed interests" which had accrued in prior years on these supplementary contracts at the guaranteed rate of 3 per cent, in the amount of $13,432.49 in 1933 and in the amount of $14,237.50 in 1934. The respondent, in computing the taxes involved in these proceedings, allowed no deductions for these amounts of "guaranteed interest" which accrued in prior years but which were paid during the taxable years involved herein.

## XXXIV

Of the $13,432.49 disallowed as a deduction for such "guaranteed interest" paid during the year 1933, $5,238.67 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the insured during his or her lifetime and $8,193.82 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the beneficiaries after the policies involved had matured. Of the $14,237.50 disallowed as a deduction for such "guaranteed interest" paid during the year 1934, $5,552.63 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the insured during his or her lifetime and $8,684.87 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising Out of Options which were exercised by the beneficiaries after the policies involved had matured.

The "guaranteed interest" which had accrued in prior years on petitioner's Supplementary Contracts Not Involving Life Contingencies and which was paid by petitioner during the taxable years here involved, was all paid under option 1 the provisions of which are set forth in Stipulation Exhibit D.

## XXXV

In 1933 and 1934, at the beginning of each calendar year, the petitioner by resolution of its Board of Directors declared an excess interest dividend over and above the guaranteed 3 per cent per annum with respect to the amounts held by it under the "Supplementary Contracts not Involving Life Contingencies." The term "excess interest dividend" is herein used in the same sense as it is used in the supplementary contracts as set out in Stipulation Exhibit D attached hereto and made a part hereof. Respondent determined that such excess interest dividends did not constitute interest within the meaning of section 203 (a) (8) of the Revenue Acts of 1932 and 1934.

## XXXVI

The petitioner paid excess interest dividends which accrued during the year on its "Supplementary Contracts not Involving Life Contingencies," at the rate declared for the year by its Board of Directors, in the amount of $534,887.54 in 1933 and in the amount of $545,463.93 in 1934. In computing the taxes involved in these proceedings the respondent allowed deductions under section 203 (a) (8) of the Revenue Acts of 1932 and 1934, in the amounts stated in paragraphs XXXI of this stipulation, for the "guaranteed interest" which accrued on these supplementary contracts during each of the years 1933 and 1934 and which was paid in the year that it accrued, but allowed no deduction for the excess interest dividend which was paid on these contracts in each of those years.

## XXXVII

Of the $534,887.54 of such excess interest dividends paid during the year 1933, $256,746.02 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the insured during his or her lifetime and $278,141.52 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the beneficiaries after the policies involved had matured.

Of the $545,463.93 of such excess interest dividends paid during the year 1934, $256,368.05 was paid with respect to Supplementary Contracts Not Involving

Life Contingencies Arising out of Options which were exercised by the insured during his or her lifetime and $289,095.88 was paid with respect to Supplementary Contracts Not Involving Life Contingencies Arising out of Options which were exercised by the beneficiaries after the policies involved had matured.

The petitioner's claims in these proceedings for deductions in the amount of guaranteed interest accrued in prior years and paid in 1933 and 1934, and for deductions in the amount of the excess interest dividends paid in 1933 and 1934, all as described in this and in the four preceding paragraphs, are in the alternative to its claims for reserve deductions under section 203 (a) (2) of the Revenue Acts of 1932 and 1934 computed upon the amounts described in paragraph XXXI hereof, named "Present Value of Amounts not yet Due on Supplementary Contracts not Involving Life Contingencies" which the petitioner contends are "reserve funds required by law" within the meaning of that section.

The excess interest dividends paid by the petitioner on its Supplementary Contracts Not Involving Life Contingencies, accrued and were paid as follows under the different options set out in Stipulation Exhibit D, exercised as indicated:

| | 1933 | 1934 |
|---|---|---|
| Option 1 exercised by insured | $147,201.05 | $153,820.84 |
| " 2 " " " | 82,158.73 | 76,910.41 |
| " 4 " " " | 27,386.24 | 25,636.80 |
| " 1 " " beneficiary | 229,930.32 | 242,840.53 |
| " 2 " " " | 36,158.40 | 34,691.51 |
| " 4 " " " | 12,052.80 | 11,563.84 |
| Total | $534,887.54 | $545,463.93 |

Exhibit D referred to in the stipulation provides in material part as follows:

### MODES OF SETTLEMENT AT MATURITY OF POLICY.

The Insured may elect to have the net sum due under this policy upon its maturity applied under one or more of the following optional modes of settlement in lieu of the lump sum provided for on the first page hereof, and in the absence of such an election by the Insured, the beneficiary, after the Insured's death, may so elect. The beneficiary, after the Insured's death, may designate (with the right to change such designation) the person to whom any amount remaining unpaid at the death of the beneficiary shall be paid if there be no such person designated by the Insured and surviving. Such election, designation or request for change shall be in writing and shall not take effect until filed with the Society at its Home Office and endorsed upon the policy or the supplementary contract, if any.

1. Deposit Option:
>Left on deposit with the Society at interest guaranteed at the rate of 3% per annum, with such Excess Interest Dividend as may be apportioned.

2. Instalment Option:
>Fixed Period.
>>Paid in a fixed number of equal annual, semi-annual, quarterly or monthly instalments as set forth in the following table.

3. Life Income

Option:

Paid in equal annual, semi-annual, quarterly or monthly instalments for five, ten or twenty years certain as may be elected and continuing during the remaining lifetime of the beneficiary as shown in the following table.

4. Instalment Option:

Fixed Amount.

Paid in equal annual, semi-annual, quarterly or monthly instalments of such amount as may be agreed upon until the net sum due under this policy together with interest on the unpaid balances at the rate of 3% per annum, and such Excess Interest Dividends as may be apportioned, shall be exhausted, the final payment to be the balance then remaining with the Society. If the interest and Excess Interest Dividend for any year shall be in excess of the instalments payable in such year, then the total amount of the instalments for the subsequent year shall be increased by the amount of such excess.

Excess Interest Dividend: The foregoing Options are based upon an interest earning of 3% per annum; but if in any year the Society declares that funds held under such Options shall receive interest in excess of 3% per annum, the interest under Option 1, the amount of instalment under Option 2, the amount of income during the fixed period of five, ten or twenty years under Option 3 and the funds held under Option 4, shall be increased for that year by an Excess Interest Dividend as determined and apportioned by the Society.

\* \* \* \* \* \* \*

*No option of settlement elected by the Insured hereunder can be changed nor can any payment thereunder be commuted, except by the Insured's written order filed with the Society at its Home Office.*

Under Options 2, 3, and 4, the first instalment will be due upon receipt of due proof of death. \* \* \*

There is also made a part of the stipulation of facts Exhibit A with regard to an endowment policy. The options granted by this policy are similar to those contained in the ordinary life policy, Exhibit D, the only difference being that upon the maturity of the endowment policy the proceeds may be paid to the insured.

The third option contained in Exhibit D provides for installment payments during the settlement period which ends with the death of the beneficiary. The instant proceeding is not concerned with supplementary contracts involving the third option.

OPINION.—In its income tax returns for 1933 and 1934 the petitioner treated its supplementary contract reserves not involving life contingencies as "reserve funds required by law" within the meaning of section 203 (a) (2) of the Revenue Acts of 1932 and 1934 and deducted from the gross income of each year 3¾ percent of the mean of such reserve funds at the beginning and end of the year. In the determination of the deficiencies the respondent has disallowed the deductions claimed. The petitioner contends that the supplementary contract reserves are "reserve funds required by law" within the meaning of the above mentioned section of the Revenue Acts of 1932

and 1934; in the alternative, it contends that it is at least entitled to deduct from gross income as interest paid on indebtedness all of the interest paid on such supplementary contracts during the taxable years, including the excess interest dividends.

We consider first the contention of the petitioner that the supplementary contract reserves constitute "reserve funds required by law" within the meaning of section 203 (a) (2) of the Revenue Acts of 1932 and 1934.

In *Helvering* v. *Illinois Life Insurance Co.*, 299 U. S. 88, the Supreme Court used this language:

\* \* \* Its [the life insurance company's] life insurance liability arises upon the death of the insured. Ascertainment of the reserves attributable to that liability involves consideration of the amount contributed to them out of premiums plus interest for a period estimated on the basis of mortality. \* \* \*

In *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686, the Supreme Court said:

\* \* \* "reserve funds" may not reasonably be deemed to include values that do not directly pertain to insurance. In life insurance the reserve means the amount, accumulated by the company out of premium payments, which is attributable to and represents the value of the life insurance elements of the policy contracts. \* \* \* Life insurance matures only upon the death of the insured and the life reserve is based upon that contingency, \* \* \*

*Penn Mutual Life Insurance Co.*, 32 B. T. A. 876, involved the question of whether supplementary contract reserves were "reserve funds required by law" within the meaning of the Revenue Act of 1928. The Board said at page 880:

\* \* \* It will be seen that the Supreme Court interprets "reserve funds required by law" as meaning only the reserve funds held by a life insurance company against the *contingency of death* of the insured. In the instant proceeding the reserve in question represents proceeds of *matured* ordinary life insurance policies which were held under an agreement. These funds were not held subject to the contingency of death of the insured, since the insured had already died. Immediately after that event the petitioner had the money representing the face of the policy in each instance, which was subject to the demand of the beneficiary. Any reserve thereafter carried to meet such demand in reality constituted a reserve to meet the contractual liability of the petitioner to the beneficiary, with whom it stood in the relationship of debtor and creditor. We accordingly hold that the reserve in question did not constitute "reserve funds required by law" within the meaning of section 203 (a) (2) of the Revenue Act of 1928; and upon the recomputation the deduction which was allowed by the respondent will be disallowed.

The petitioner argues that the question as to whether supplementary contract reserves constitute "reserve funds required by law" was before the court in *Mutual Benefit Life Insurance Co.* v. *Herold* (1912), 198 Fed. 199; that although that case was concerned with the proper construction of the words "reserve funds required by law" as used in the Corporation Excise Tax Act of 1909, nevertheless, that statute is *in*

*pari materia* with the income tax acts beginning with 1913; and that the ruling of the court in that case is equally applicable to the instant proceeding. The petitioner further points out that under all of the income tax acts beginning with 1913 through 1934 the respondent has held in his regulations that supplementary contract reserves constitute "reserve funds required by law." Thus, in article 147 (d) of Regulations 33, promulgated under the provisions of the Revenue Act of 1913, and the same article in Regulations 33 (Revised), it is provided:

(d) The reserve funds of insurance companies to be considered in computing the deductible net addition to reserve funds are held to include only the reinsurance reserve and the reserve for supplementary contracts required by law in the case of life insurance companies, * * *

In article 569 of Regulations 45, approved April 17, 1919, it is provided:

* * * In the case of life insurance companies the net addition to the "reinsurance reserve" and the "reserve for supplementary contracts not involving life contingencies," and the net addition to any other reserve funds necessarily maintained for the purpose of liquidating policies at maturity, are legally deductible. * * *

The same provision was contained in article 569, Regulations 45 (1920 Edition).

Article 681 of Regulations 62, 65, and 69, issued under the Revenue Acts of 1921, 1924, and 1926, provides:

* * * Generally speaking, the following will be considered reserves as contemplated by the law: Items 7, 8, 9, 10, and 11 of the liability page of the annual statement for life companies, and items 16, 17, 18, 19, and 26 of the liability page of the annual statement for miscellaneous stock companies, if a life insurance company is also transacting other kinds of insurance business, * * *

Article 971 of Regulations 74 and 77, issued under the Revenue Acts of 1928 and 1932, provides in part:

* * * Generally speaking, the following will be considered reserves as contemplated by the law: Items 7-11 of the liability page of the annual statement for life insurance companies, and items 16-19 and 26 of the liability page of the annual statement for miscellaneous stock companies, if a life insurance company is also transacting other kinds of insurance business. * * *

From the liability page of the annual statements of life insurance companies, referred to in these regulations and used by life insurance companies for the years 1920 to 1925, inclusive, item 9, and, for the years 1926 to 1934, inclusive, item 10 read: "Present value of amounts not yet due on supplementary contracts *not* involving life contingencies."

It was not until Regulations 86 was promulgated under the provisions of the Revenue Act of 1934, approved February 11, 1935, that a change was made in the respondent's regulations relative to

the meaning of the phrase "reserve funds required by law" so as to exclude from such reserve funds the so-called supplementary contract reserves. In article 203 (a) (2)-1 of Regulation's 86 it was said that the reserve funds required by law referred to by the Revenue Act of 1934 did not include "liability on supplementary contracts not involving life contingencies." Treasury Decision 4615; Cumulative Bulletin XIV-2, p. 310, approved December 18, 1935, amended prior regulations beginning with Regulations 62, issued under the Revenue Act of 1921, to conform to the above ruling made in article 203 (a) (2)-1 of Regulations 86.

The petitioner argues, upon the basis of *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110, that Congress must be presumed to have intended the Revenue Acts of 1932 and 1934 to be interpreted as prior income tax acts were interpreted with respect to the issue under consideration.

But a regulation of the Commissioner which is contrary to and not consistent with the statute will be disregarded by the courts. See *Morrill* v. *Jones*, 106 U. S. 466; *Robinson* v. *Lundrigan*, 227 U. S. 173; *Commissioner* v. *Winslow*, 113 Fed. (2d) 418. The regulations and practices of administrative departments are entitled to weight and serious consideration in construing a statute, but it is for the courts to determine the meaning of a statute, and not an executive department of the Government. A Treasury regulation is merely an expression of opinion as to the meaning of the law by the official charged with its enforcement. *Edwards* v. *Douglas*, 269 U. S. 204; *Weld* v. *Nichols*, 9 Fed. (2d) 977. We think it clear that the respondent's regulations which have permitted supplementary contract reserves to be regarded as "reserve funds required by law" are contrary to the interpretation placed upon that phrase by the Supreme Court over a long period of years. A question cognate to that herein involved was before the Supreme Court in *New York Life Insurance Co.* v. *Edwards*, 271 U. S. 109. In that case the insurance company claimed that it was entitled to deduct from gross income as a net addition to reserve funds required by law an increase in its liability in respect of unreported losses. The Court stated:

4. A number of policy holders died during the calendar year, but their deaths were not reported before it terminated. The superintendent of insurance required the company to set aside a special fund to meet these unreported losses, and it claimed that this was an addition to the reserve fund required by law. We think this claim was properly rejected by the commissioner, although the courts below held otherwise. *McCoach* v. *Insurance Co. of North America*, 37 S. Ct. 709, 244 U. S. 585, 61 L. Ed. 1333, and *United States* v. *Boston Insurance Co.*, 46 S. Ct. 97, 269 U. S. 197, 70 L. Ed. 232 (November 23, 1925), pointed out that "the net addition, if any, required by law to be made within the year to reserve funds," does not necessarily include

whatever a state official may so designate; that "reserve funds" has a technical meaning. It is unnecessary now to amplify what was there said. The item under consideration represented a liability and not something reserved from premiums to meet policy obligations at maturity.

In our opinion the Supreme Court's interpretation of the phrase "reserve funds required by law" must be given effect. The supplementary contract reserves of petitioner represent amounts of assets retained to meet the company's liabilities upon insurance policies which had already matured. They do not represent assets held against unmatured policies. The petitioner is therefore not entitled to deduct from the gross income of each of the years 1933 and 1934 3¾ percent of the mean of its supplementary contract reserves not involving life contingencies.

The second question for consideration on this issue is the amount of interest which the petitioner is entitled to deduct from gross income in making payments during the taxable years under its supplementary contracts not involving life contingencies.

Section 203 (a) of the Revenue Act of 1932 provides in material part as follows:

SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

\* \* \* \* \* \*

(8) INTEREST.—All interest paid or accrued within the taxable year on its indebtedness, except [exception not material] \* \* \*

Section 203 (a) of the Revenue Act of 1934 is the same as above except that the words "or accrued" have been omitted from subdivision (8).

Treasury Decision 4615, C. B. XIV-2, p. 310, approved December 18, 1935, amends article 975 of Regulations 77 and article 203 (a) (8)-1 of Regulations 86, and provides:

(4) If a life insurance company pays interest on the proceeds of life insurance policies left with it pursuant to the provisions of supplementary contracts, not involving life contingencies, or similar contracts, the interest so paid shall be allowed as a deduction from gross income, except that such deduction shall not be allowed in respect of interest accrued in any prior taxable year to the extent that the company has had the benefit of a deduction of 4 percent or 3¾ per cent, as the case may be, of the mean of the company's liability on such contracts, by the inclusion of such liability in its reserve funds.

It is the contention of the petitioner that, if it is not entitled to consider its supplementary contract reserves as "reserve funds required by law", it must be because such reserve funds constitute indebtedness; that, since the applicable statutes and the Commissioner's regulations provide for the deduction from gross income of *all* interest paid upon indebtedness, then the petitioner is entitled to deduct the full amount of the interest as shown by the stip-

ulated facts which it paid during the taxable years 1933 and 1934 pursuant to the provisions of its supplementary contracts. It points out that in *Duffy* v. *Mutual Benefit Life Insurance Co.*, 272 U. S. 613, the Supreme Court said:

> * * * Until the maturity of a policy, the policyholder is simply a member of the corporation, with no present enforceable right against the assets. Upon the maturity of the policy he becomes a creditor with an enforceable right. Then for the first time there is an indebtedness. See *Mayer* v. *Attorney General*, 32 N. J. Eq. 815, 820-822. In the meantime, each member bears a relation to the mutual company analogous to that which a stockholder bears to the joint stock company in which he holds stock. * * *

The interest with which we are concerned in these proceedings was paid upon supplementary contracts under options 1, 2, and 4 of the policy above set out. Under these options petitioner obligated itself to pay interest or to include in installment settlements interest at the guaranteed rate of 3 percent per annum. It was provided, however, that:

> * * * if in any year the Society declares that funds held under such Options shall receive interest in excess of 3% per annum, the interest under Option 1, the amount of instalment under Option 2, * * * and the funds held under Option 4, shall be increased for that year by an Excess Interest Dividend as determined and apportioned by the Society.

We shall consider first the interest paid at the guaranteed rate of 3 percent per annum. On brief the respondent concedes upon the basis of *Penn Mutual Life Insurance Co.*, 32 B. T. A. 876, and *Penn Mutual Life Insurance Co.* v. *Commissioner*, 92 Fed. (2d) 962; that the petitioner is entitled to deduct from gross income the guaranteed interest paid pursuant to policy contracts under option 1.

Under option 2 the petitioner obligates itself to make installment payments certain over a period of years, each installment payment to include interest at the guaranteed rate of 3 percent per annum. The respondent contends that the interest included in the installment payments is not deductible from gross income. In *Penn Mutual Life Insurance Co.* v. *Commissioner, supra,* the United States Circuit Court of Appeals for the Third Circuit held that deductions would be allowed for interest included in installment payments under options exercised by beneficiaries after the death of the insured, but that no deductions would be allowed in such cases where the options had been exercised by the insured. The court said (92 Fed. (2d) at p. 967):

> Now dealing with the instalment settlements thus contracted for, under the Trust Certificate policy or under the Ordinary Life policy when the option has been exercised within the lifetime of the insured, we find the obligations thus created are plainly obligations of policy rather than obligations of debt. The face of the policies bears an obligation to pay in instalments and at given dates. There can be no obligation to pay, first, until the policy has matured by the death of the insured, and second, until the arrival of the due dates of the

respective instalment payments. Such a policy matures upon the death of the insured. Upon maturity its nature changes from a policy obligation to an obligation of debt, but, before such an obligation of debt can bear interest, it must become due. When the due date arrives it will bear interest and not before.

We understand the reasoning of the court to be that in a case where the insured elects the option the principal of the indebtedness on the maturity of the policy is not the face amount of the policy but the face amount of all of the installment payments to be made in settlement of the policy. Where in such case the insurance company makes an installment payment it is not paying both principal and interest, but is paying principal only. Since in such case the petitioner is not paying interest on indebtedness, it is not entitled to deduct as interest paid on indebtedness the amount of interest included in the installment payment. We therefore hold with respect to interest paid on supplementary contracts covered by option 2 that the petitioner is entitled to deduct only the amount of interest included in installment payments where the beneficiary after the death of the insured or after the maturity of the policy elects the option.

Under option 4 petitioner obligates itself to make:

* * * equal annual, semi-annual, quarterly or monthly instalments of such amount as may be agreed upon until the net sum due under this policy together with interest on the unpaid balances at the rate of 3% per annum, and such Excess Interest Dividends as may be apportioned, shall be exhausted, the final payment to be the balance then remaining with the Society.

We know of no reason why the interest included in installment payments under option 4 should be treated any differently from the interest in installment payments under option 2. The only difference between the two is that in option 4 the "amount" is fixed, whereas in option 2 the "period" is fixed. We do not think that this difference requires any different treatment so far as the deductibility of the guaranteed interest is concerned. We therefore hold, with respect to interest paid on supplementary contracts covered by option 4, that the petitioner is entitled to deduct only the amount of interest included in installment payments where the beneficiary after the death of the insured or after the maturity of the policy elects the option.

We next consider the question of the excess interest dividends. The facts pertaining to this question are substantially the same as the facts involved in *Penn Mutual Life Insurance Co.* v. *Commissioner*, *supra*, under the heading "As to the 'Additional Interest' Awarded to the Policies by the Board of Trustees and Paid Out During the Years 1926 and 1928." Under such circumstances it follows that our decision on this question must likewise be the same as in the cited case. We, therefore, sustain the respondent's determination in disallowing as interest paid on indebtedness the amounts of $534,887.54

for 1933 and $545,463.93 for 1934. *Penn Mutual Life Insurance Co.* v. *Commissioner, supra.*

It will be noted from the excerpt from Treasury Decision 4615, quoted above, that the respondent has held that a life insurance company may not deduct from gross income of the taxable year "interest accrued in any prior taxable year to the extent that the company has had the benefit of a deduction of 4 per cent or 3¾ per cent, as the case may be, of the mean of the company's liability on such contracts, by the inclusion of such liability in its reserve funds." It has been stipulated that during the years 1933 and 1934 the petitioner paid guaranteed interest in the amount of $13,432.49 and $14,237.50, respectively, which interest had accrued in prior years. The respondent contends that by virtue of his regulation the petitioner may not deduct during the years 1933 and 1934 the above mentioned amounts of guaranteed interest paid.

The petitioner is a life insurance company. It makes its returns on a cash receipts and disbursements basis. Under the respondent's present contention the petitioner was not entitled for years prior to 1933 to include in its "reserve funds required by law" the supplementary contract reserves. By reason of the fact that it made its returns upon such basis for years prior to 1933 the respondent undertakes to correct for 1933 and 1934 an error made in a prior year by disallowing a deduction which the petitioner is entitled to make under the taxing statutes. But mistakes made in the audit of a prior year may not be charged against a taxpayer for a succeeding year. *Wobber Brothers,* 35 B. T. A. 890; *Schmidlapp* v. *Commissioner* (C. C. A., 2d Cir.), 96 Fed. (2d) 680, 683. In *Lansing McVickar,* 37 B. T. A. 758, the Board said at page 762: "The error for 1930 may not be corrected by a deliberately erroneous computation of the tax for 1931."

It will be noted from the Commissioner's regulations referred to above that no part of the interest paid on indebtedness during the taxable year is to be disallowed except "to the extent that the company has had the benefit of a deduction of 4 per cent or 3¾ percent, as the case may be, of the mean of the company's liability on such contracts, by the inclusion of such liability in its reserve funds." The record does not show that the petitioner had any such benefit during prior years. We are of the opinion that the contention of the respondent upon this point is without merit.

*Issue 11.*

Facts.—During the taxable years 1933 and 1934, and prior thereto, the petitioner accepted funds from certain accident and health policyholders under an agreement with each such policyholder that it would

hold on demand the fund accepted from him and supplement it with interest at a specified rate; that, in the event the policyholder did not demand the repayment of the fund, it would apply the fund, together with the interest supplement, in payment of premiums subsequently becoming due on the policyholder's policy; but that at any time prior to the due date of such premiums, it would, upon the policyholder's demand, repay the fund to the policyholder. These funds are not included in the amounts of unearned accident and health premiums for which the petitioner herein claims reserve deductions. The interest supplements made by the petitioner in accordance with such agreements, and applied during the year to premiums as they became due, amounted to $4,525.68 in 1933; and to $5,220.19 in 1934. The respondent in computing the taxes involved in these proceedings allowed no deduction for such interest supplements so made and applied during the taxable years herein involved, and no deduction in respect of the funds supplemented.

OPINION.—If the petitioner had paid the amount of interest here in question to the policyholder there could be no question as to the right to the deduction claimed. See *Pan-American Life Insurance Co.*, 38 B. T. A. 1430. It is the respondent's contention that, since the interest was not paid to the policyholder but was credited to him in settlement of premiums due, the amount does not constitute the payment of interest on indebtedness. In support of his position the respondent cites *Illinois Life Insurance Co.*, 30 B. T. A. 1160, in which we held that, where a life insurance company accepted the payment of premiums in advance and granted a discount on the payment, the amount of the discount did not constitute the payment of interest upon indebtedness. This was for the reason that the insurance company was not indebted to the policyholder for anything. Those are not the facts here. The petitioner owed the policyholder interest upon a deposit of money made by him. The payment of the interest in liquidation of a liability of the policyholder to the petitioner constitutes a payment within the meaning of the income tax acts. Thus in *Lynchburg Trust & Savings Bank* v. *Commissioner*, 68 Fed. (2d) 356; certiorari denied, 292 U. S. 640, in quoting from *Commissioner* v. *Stearns* (C. C. A., 2d Cir.), 65 Fed. (2d) 371, 373, it was said: "'Credit' for practical purposes is the equivalent of 'payment'." Clearly if A owes B $10 interest upon a note and B owes A an equal amount for merchandise purchased, the credit by A to B's account of $10 is a payment of the interest by A of the $10. The situation here is parallel. The action of the respondent upon this issue is reversed.

### Issue 13.

FACTS.—During the taxable years 1933 and 1934 petitioner owned and in part occupied its home office building located at 393 Seventh

Avenue, New York City. This building was constructed on a cost plus basis. Petitioner capitalized as a part of the cost of the building the architect's fee, the contractor's fee, and certain other miscellaneous general expenses incurred in the course of construction in the total amount of $1,651,214.92, not allocated to the cost of the various component elements of the building. These various component elements of the building such as steel, plumbing, elevators, etc., are depreciated at appropriate rates upon the basis of their respective costs which do not include any part of the above mentioned capitalized general expenses. These capitalized general expenses consist of the following:

| | |
|---|---|
| General conditions | $419,260.19 |
| Contractor's fee | 492,397.95 |
| Architect's fee | 524,861.19 |
| Home office supervisors | 189,729.32 |
| Own alterations | 24,966.27 |

A reasonable allowance for depreciation in respect of the above building costs for each of the years 1933 and 1934 is 2½ percent of the amount of these capitalized costs.

OPINION.—The respondent claims that the petitioner is not entitled to depreciation in respect of the above referred to capitalized costs of $1,651,214.92 upon the ground that they represent the cost of intangibles. As we understand the respondent's position it is that they can not be allocated to the various component elements of the building, such as steel, plumbing, elevators, etc.

The evidence of record shows the break-up of the above referred to costs. We do not perceive any reason why all of the capitalized costs are not a part of the cost of petitioner's building. Clearly the architect's fee and the contractor's fee are as much a part of the cost of the building as the wages paid to the masons, carpenters, etc. All of these items represent a part of the cost of the building. It is immaterial that they can not be allocated to the component elements of the building subject to depreciation at different rates. The parties have stipulated that a reasonable rate for depreciation upon these capitalized costs, if they are subject to a depreciation allowance, is 2½ percent. We hold that these capitalized costs are depreciable and that the petitioner is entitled to a depreciation allowance for each year at the stipulated rate.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

---

STERNHAGEN did not participate in the consideration of or decision in this report.

BLACK, dissenting: I dissent from that part of the majority opinion which holds that the reserves maintained by petitioner for the ultimate payment of its obligations in respect of amounts not yet due on supplementary contracts not involving life contingencies are not reserves required by law.

I think these reserves are "Reserve funds required by law," within the meaning of section 203 of the Revenue Acts of 1932 and 1934, which are applicable to these proceedings. I, therefore, think that under this section petitioner is entitled, in determining its net income, to a deduction of 3¾ percent of the mean of the reserve funds in question held at the beginning and the end of the taxable years.

It seems to me that these particular reserves are just as valid and essential as any that the life insurance companies are required to maintain. As said by the court in *Mutual Benefit Life Insurance Co.* v. *Herold*, 198 Fed. 199; affirmed on another point, 201 Fed. 918; certiorari denied, 231 U. S. 755, "These obligations seem to come fairly within the definitions of reserve, as above given. Nothwithstanding the policy-holder has died, there still remain unpaid under the policy certain installments not presently due, but which will mature from time to time in the future. These are as much policy obligations as they would have been if payable in one sum immediately upon the death of the insured. They have a value, and that value must be estimated, and, when estimated, adequate provision made for their payment as they mature, which can only be done by the establishment of a suitable reserve. Furthermore, such reserves are 'required by law' within the meaning of the act. As appears by the agreed statement of facts, the commissioners of insurance of all the states require the establishment of a reserve to cover the obligations of the company on such supplementary policy contracts. This fact of itself tends strongly to show that they are required by law."

While it is true that *Mutual Benefit Life Insurance Co.* v. *Herold*, *supra*, was decided in 1912, and dealt with the Corporation Tax Act of 1909, nevertheless I think what the court said respecting reserves for the fulfillment of obligations under these supplementary contracts not involving life contingencies being "reserves required by law" is entirely appropriate to the revenue acts which are applicable in the instant proceedings. The taxable years which we have before us are the years 1933 and 1934 and the applicable regulations are Regulations 77 and Regulations 86.

At the time petitioner filed its income tax return for the year 1933, the Treasury Regulations (art. 971, Regulations 77) held that the type of reserve here involved was a reserve required by law. Substantially the same provisions were contained in all of the regulations issued under all of the revenue acts beginning with the Revenue Act of 1921. Shortly after the Court of Claims handed down its decision

in *Continental Assurance Co.* v. *United States*, 8 Fed. Supp. 474, the Treasury changed its regulations and provided that certain reserves maintained by life insurance companies which had been recognized in the regulations as "reserves required by law" should no longer be so considered. One of these was a reserve maintained for supplementary contracts not involving life contingencies.

In *Pan-American Life Insurance Co.*, 38 B. T. A. 1430, we discussed in considerable detail this change in the Treasury regulations and we pointed out that there had been no corresponding change in the statute which would justify such a change in the regulations.

We held that the Commissioner's changed regulations were invalid as to reserves for incurred but not yet accrued disability benefits maintained by the taxpayer insurance company, and that these reserves were reserves required by law, and that the taxpayer was entitled to deduct 3¾ percent of the mean of these reserves held at the beginning and end of the taxable year. Our decision was affirmed by the Fifth Circuit, 111 Fed. (2d) 366, and was affirmed by the Supreme Court in *Helvering* v. *Pan-American Life Insurance Co.*, 311 U. S. 372. In that opinion and in the opinion of *Helvering* v. *Oregon Mutual Life Insurance Co.*, 311 U. S. 267, decided on the same day, the Supreme Court referred to the change in regulations made by the Commissioner referred to above and held that such change, in so far as it affected the reserves involved in those cases, was beyond the statute and was therefore invalid. While it is true that the Supreme Court's decisions in the *Oregon Mutual Life Insurance Co.* and the *Pan-American Life Insurance Co.* cases involved disability reserves and not reserves for supplementary contracts not involving life contingencies, as here involved, nevertheless I think the same fundamental reasoning which caused the Supreme Court to hold that disability reserves are reserves "required by law" would require a holding that reserves to meet an insurance company's liability under its supplementary contracts, is a reserve "required by law." I think that would be particularly true as to those policies where the insured himself has directed that the deferred payment plan of settlement with the beneficiary be used. As to the reserves maintained to ultimately pay these policies improved annually by interest, the Commissioner has denied all deduction for interest because, as he says, when these options of settlements have been elected by the insured within his lifetime the obligations thus created are the obligations of the policy rather than obligations of debt. This view has been upheld by the Third Circuit in *Penn Mutual Life Insurance Co.* v. *Commissioner*, 92 Fed. (2d) 962, and by the Fifth Circuit in *Pan-American Life Insurance Co.*, *supra*, and is upheld in the majority opinion in the instant case.

If these decisions are correct on this point, and I think they are, then plainly the option settlements where elected by the insured in

314

his lifetime are policy obligations and reserves to insure payment of these obligations are reserves "required by law" within the meaning of the applicable statute and the majority opinion errs in disallowing a deduction of 3¾ percent of the mean of these reserves in determining petitioner's net income for the years 1933 and 1934. It follows of course that if petitioner were allowed a deduction of 3¾ percent of the mean of these reserves, it would not be entitled to a deduction for interest. This, petitioner concedes.

It may well be that a different rule applies to these policies where after the decedent dies the beneficiary of the policy elects to leave the proceeds with the life insurance company and take deferred settlements including interest rather than lump sum payments. As to these the majority opinion allows the deduction of guaranteed interest, following *Penn Mutual Life Insurance Co.* v. *Commissioner, supra*, and *Pan-American Life Insurance Co., supra*, and disallows the deduction of 3¾ percent of the mean of the reserves applicable to these particular supplementary contracts.

As to that part of the majority opinion there may be considerable logic to support it. The strongest impediment against it would be the Commissioner's own regulations from 1921 to 1932, inclusive. But be that as it may, I do emphatically disagree as to the holding of the majority concerning the reserves maintained by petitioner to fulfill its obligations on those supplementary contracts which represent elections made by the insured during his lifetime and which both the Board and the courts have held to be policy obligations and not mere indebtedness created by choice of the beneficiary, after the death of the insured.

ARUNDELL agrees with this dissent.