JEFFERSON STANDARD LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89422. Promulgated April 29, 1941.

*Julius C. Smith, Esq.*, for the petitioner.
*Willis R. Lansford, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in income tax for 1933 of $18,942.85. The questions in issue are whether petitioner is entitled to deduct from its gross income of 1933 an amount equaling 3¾ percent of the mean of the reserves which it set up on its books (1) for incurred disability benefits, and (2) for supplementary contracts not involving life contingencies, and, if the deduction in respect of the latter reserves is not allowable, whether the petitioner is entitled to deduct the full amount of alleged interest paid during the taxable year to beneficiaries under the supplementary contracts.

Certain of the adjustments made by the respondent in the determination of the deficiency and set forth in the deficiency notice are conceded by the petitioner to be correct. The essential facts have all been stipulated and are incorporated herein by reference.

Petitioner is a stock life insurance company, incorporated under the laws of the State of North Carolina. Its principal office and place of business is at Greensboro.

On its books of account the petitioner had a reserve at December 31, 1932, for incurred disability benefits of $2,857,794 and on December 31, 1933, of $2,927,291. In its income tax return for 1933 the petitioner deducted from gross income 3¾ percent of the mean of these reserves, pursuant to the provisions of section 203 (a) (2) of the Revenue Act of 1932. The respondent disallowed the deduction upon the ground that the reserve was not one of the "reserve funds required by law" within the meaning of the above referred to section of the taxing statute. It is stipulated that this question shall be disposed of in accordance with the determination of the Board and the courts in the case of *Oregon Mutual Life Insurance Co.*, Docket Nos. 85182 and 88299. Our decision in that case was affirmed by the United States Circuit Court of Appeals for the Ninth Circuit, 112 Fed. (2d) 468, and by the Supreme Court, 311 U. S. 267. In accordance with the stipulation of the parties the petitioner is entitled to the deduction from the gross income of 1933 of 3¾ percent of the mean of this reserve.

The second question in issue is whether the petitioner is entitled to deduct from the gross income of 1933 the amount of $45,893.81 representing 3¾ percent of the mean of its reserve funds maintained against a liability shown in its balance sheets as "present value of amounts not yet due on supplementary contracts *not* involving life

contingencies." The petitioner contends that it is entitled to consider such assets retained against the mentioned liability as "reserve funds required by law" within the meaning of section 203 (a) (2) of the Revenue Act of 1932; but that if the deduction in respect of such reserves is not allowable, it is then entitled to deduct from gross income the full amount of the interest paid to the beneficiaries under the supplementary contracts during the taxable year.

In the determination of the deficiency the respondent has held that the so-called supplementary contract reserves are not "reserve funds required by law" and has accordingly disallowed the deduction from gross income of 3¾ percent of the mean of such reserves for the taxable year. In lieu of this deduction he has allowed the petitioner to deduct $16,702.70, which represents the guaranteed interest paid by the petitioner in respect of its liability on a part of its supplementary contracts.

The form of insurance contract regularly issued by the petitioner, which is a part of the stipulation of facts filed with the Board, provides for optional methods of settlement as follows:

### OPTIONAL METHODS OF SETTLEMENT

The payee of any lump sum due in accordance with the provisions of this policy may have the net proceeds payable applied in any method described in the following options provided such net proceeds equal or exceed $1000 and further provided no method of settlement may be elected under which the periodic payments might be less than $10.00 each.

1—Payment of equal monthly installments for a specified number of years, the first installment being payable imediately, in accordance with the following Table per thousand of net proceeds available: [Table.]

\* \* \* \* \* \* \*

3—Retained by the Company for specified period, or during the lifetime of a designated beneficiary and while so retained, interest paid at the end of each interest period at such rate as the Directors of the Company may declare, but not less than 3½% per annum. The amount of interest payments for each $1000 of the net proceeds shall not be less than $35.00 annually, $17.35 semiannually, $8.64 quarterly or $2.87 monthly. At the expiration of the designated period the net sum available will be paid to such person or persons and in such manner as shall have been agreed upon with the Company:

4-Payment of equal annual, semi-annual, quarterly or monthly installments of such an amount as may be selected until the net proceeds together with interest at such rate as the Directors of the Company may declare, but not less than 3½% per annum, shall have been exhausted. The fixed amount payable each year shall be not less than 5% of the original proceeds left with the Company.

Provision may be made under either Option (1) or Option (2) for equivalent annual, semi-annual or quarterly installments, such installments being computed at an interest rate of 3½% per annum.

The amounts guaranteed above under Options [Option] (1) \* \* \* are based on a guaranteed interest earning of 3½% per annum. Such excess interest as the Directors of the Company may declare shall be payable on the 15th day of December of each year, \* \* \*

The Insured may select any of the above options for the payment of the proceeds of this policy as a death claim and subsequently change or revoke a pre-

vious selection, such selection, change or revocation to take effect upon receipt of written notice at the Home Office of the Company in Greensboro, North Carolina, and endorsement of same upon this contract by the Company during the lifetime of the Insured.

The Beneficiary can neither assign nor commute unpaid installments nor make any change in a method of settlement selected by the Insured unless such right is given to the Beneficiary by the Insured in writing and endorsed on this contract by the Home Office during the lifetime of the Insured.

The reserves set up under options (1), (3), and (4) above are all in controversy, being the reserves for "supplementary contracts" referred to in item (f) of the deficiency notice. The amount disallowed as a deduction in respect of these reserves is $45,893.81, or 3¾ percent of the mean of the reserves.

As to the amounts of the reserves set up in connection with each of the options (1), (3), and (4) and the amounts of interest paid to beneficiaries under such options, it is stipulated as follows:

## XI.

(A) That in connection with and under Option No. 1, the petitioner paid in the calendar year 1933 to beneficiaries who selected Option No. 1, after the proceeds became payable to said beneficiaries in a lump sum, the following:

(a) Guaranteed interest in accordance with the terms of the contract___ $2,989.00
(b) Interest over and above the guaranteed interest, as determined by the Board of Directors of the petitioner_____ 1,251.00

Total_____ $4,240.00

that in connection with the said supplementary contracts, upon which payments were made as aforesaid, the petitioner set up on its books as of December 31, 1932, the reserve of $75,804.00, and as of December 31, 1933, $89,507.00, the mean of which is $82,655.50, and 3¾% of said mean is $3,099.58.

(B) That in connection with and under Option No. 1, the petitioner paid in the calendar year 1933 to beneficiaries under policies where the insured prior to the date of his death selected settlement option No. 1, as follows:

(a) Guaranteed interest in accordance with the terms of the contract___ $9,693.00
(b) Interest over and above the guaranteed interest, as determined by the Board of Directors of the petitioner_____ 3,997.00

Total_____ $13,690.00

that in connection with the said supplementary contracts upon which payments were made as aforesaid, the petitioner set up on its books as of December 31, 1932, the reserve of $272,892.00, and as of December 31, 1933, $281,774.00, the mean of which is $277,333.00, and 3¾% of said mean is $10,399.99.

## XII.

That in connection with payments of interest under settlement option No. 3, the petitioner paid, and the Commissioner allowed, guaranteed interest in the amount of $16,702.70; that the petitioner paid in addition to said guaranteed interest of $16,702.70 the further sum of $7,158.30, representing additional interest as determined by the Board of Directors of the petitioner, which said sum was not allowed. The reserves set up under Option No. 3 constitute

the balance of the total of reserves for supplementary contracts shown in paragraph V above which are not segregated in paragraphs XI and XIII hereof.

### XIII.

(A) That in connection with and under Option No. 4, the petitioner paid in the calendar year 1933 to beneficiaries who selected Option No. 4, after the proceeds became payable to said beneficiaries in a lump sum, the following:

(a) Guaranteed interest in accordance with the terms of the contract_ $1, 052. 00
(b) Interest over and above the guaranteed interest, as determined
    by the Board of Directors of the petitioner_____ 390. 00

    Total_____ $1, 442. 00

that in connection with the said supplementary contracts upon which payments were made as aforesaid, the petitioner set up on its books as of December 31, 1932, the reserve of $29,706.00, and as of December 31, 1933, $36,977.00, the mean of which is $33,341.50, and 3¾% of said mean is $1,250.31.

(B) That in connection with and under Option No. 4, the petitioner paid in the calendar year 1933 to beneficiaries under policies where the insured prior to the date of his death selected settlement Option No. 4, as follows:

(a) Guaranteed interest in accordance with the terms of the contract_ $9, 522
(b) Interest over and above the guaranteed interest as determined by
    the Board of Directors of the petitioner_____ 2, 582

    Total_____ $12, 104

that in connection with the said supplementary contracts upon which payments were made as aforesaid, the petitioner set up on its books as of December 31, 1932, the reserve of $241,805.00, and as of December 31, 1933, $306,603.00, the mean of which is $274,204.00, and 3¾% of said mean is $10,282.65.

All of the interest set out above was paid by the petitioner to beneficiaries during 1933 and not merely credited to the beneficiaries or to supplementary contract reserves.

Relative to the petitioner's claim that the supplementary contract reserves are "reserve funds required by law" within the meaning of section 203 (a) (2) of the Revenue Act of 1932, we held in *Penn Mutual Life Insurance Co.*, 32 B. T. A. 876, 878, that such reserves were not "reserve funds required by law" within the meaning of the Revenue Act of 1928, which, so far as material, is the same as the Revenue Act of 1932. Our decision in that case was in effect affirmed per curiam by the United States Circuit Court of Appeals for the Third Circuit, at 92 Fed. (2d) 972, although that case was remanded to the Board with instructions to redetermine the tax in accordance with the principle of law enunciated in *Penn Mutual Life Insurance Co.* v. *Commissioner*, 92 Fed. (2d) 962.

In *Commissioner* v. *Pan-American Life Insurance Co.* (C. C. A., 5th Cir.), 111 Fed. (2d) 366, the question before the court was whether reserves for disability benefits were reserve funds required by law

within the meaning of section 203 (a) (2) of the Revenue Act of 1932. The court held that they were. In its opinion it said:

\* \* \* The method of computation so employed is wholly consistent with that used for establishing amounts of premiums and reserves for ordinary life-, insurance and annuity contracts, and is wholly inconsistent with reserves created to defray accrued and definite liabilities payable in the future. This is the distinguishing feature between the case at bar and those relied upon by the commissioner, which dealt with the reserves for the payment of accrued obligations for fixed amounts created by contract. The latter are mere solvency reserves having no relation to true insurance risks. [Citing *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585; *United States* v. *Boston Insurance Co.*, 269 U. S. 197; *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686; *Helvering* v. *Illinois Life Insurance Co.*, 299 U. S. 88.]

Upon the convention form of report on which the petitioner and every other life insurance company makes reports to state insurance departments, the petitioner's liability, "present value of amounts not yet due on supplementary contracts *not* involving life contingencies", is set up separately from its legal reserve. Although this fact is not determinative of the question in issue, it is significant that its liability is not included under the caption "net reserve." In any event the petitioner's liability in respect of its supplementary contracts constitutes fixed indebtedness. In every case after a policy has matured or, as in this case, the insured has died, the policy becomes noncancelable, the premium-paying period has passed, and the liability of the petitioner to pay the proceeds of the policy according to its provisions is fixed. In *Duffy* v. *Mutual Benefit Life Insurance Co.*, 272 U. S. 613, the Court said:

\* \* \* Until the maturity of a policy, the policyholder is simply a member of the corporation, with no present enforceable right against the assets. Upon the maturity of the policy he becomes a creditor with an enforceable right. Then for the first time there is an indebtedness. See *Mayer* v. *Attorney General*, 32 N. J. Eq. 815, 820-822. In the meantime, each member bears a relation to the mutual company analogous to that which a stockholder bears to the joint stock company in which he holds stock. \* \* \*

A reserve maintained to pay a fixed indebtedness is not to be included in the amount of "reserve funds required by law" within the meaning of section 203 (a) (2) of the applicable taxing statute. See *Equitable Life Assurance Society of the United States*, 44 B. T. A. 293.

We come now to the alternative contention of the petitioner, that it is entitled to deduct from gross income the interest paid during the taxable year upon its indebtedness represented by its supplementary contracts.

The applicable provisions of the Revenue Act of 1932 are as follows:

# 320

SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

\*  \*  \*  \*  \*  \*  \*

(8) INTEREST.—All interest paid or accrued within the taxable year on its indebtedness, except \* \* \* [exception immaterial].

The petitioner contends that it is entitled to deduct the full amount of interest set out in the stipulation of facts above—not only the guaranteed interest, but also the excess interest as determined by its directors.

Under option 3 of its policy contracts the insured or the beneficiary has the right to elect to have the proceeds of the policy "retained by the Company for a specified period, or during the lifetime of a designated beneficiary, and while so retained interest paid at the end of each interest period at such rate as the directors of the Company may declare, but not less than 3½% per annum." The respondent allowed the deduction of all the interest paid under this option at the 3½ percent rate. The evidence does not show separately the amount of interest paid where the insured selected the option and the amount where the beneficiary selected such option. During the taxable year the petitioner retained large amounts of the proceeds of matured policies in accordance with the provisions of option 3 and paid interest thereon at the rate of 5 percent per annum. Counsel for the petitioner states that this rate of interest had been paid for many years prior to 1933. In the determination of the deficiency the respondent has allowed the deduction of the interest paid at the rate of 3½ percent per annum, but has disallowed the deduction of the excess interest paid.

We do not see any sound reason for disallowing the deduction of any part of the interest paid under supplementary contracts represented by option 3. Clearly the amounts retained by the insurance company pursuant to such option constitute interest-bearing indebtedness of the company. The statute permits a life insurance company to deduct interest paid upon its indebtedness. Treasury Decision 4615, approved December 18, 1935, amended article 975 of Regulations 77, promulgated under the provisions of the Revenue Act of 1932, by adding to that article the following paragraph:

(4) If a life insurance company pays interest on the proceeds of life insurance policies left with it pursuant to the provisions of supplementary contracts, not involving life contingencies, or similar contracts, the interest so paid shall be allowed as a deduction from gross income, \* \* \*

It will be noted that the regulation does not provide for the disallowance of any part of the interest paid upon such indebtedness.

If the petitioner had obligated itself to pay interest at the rate of 5 percent per annum, or at the legal rate, during the taxable year

there could be no question but that it would be entitled to deduct the interest so paid. The petitioner has obligated itself to pay upon these retained proceeds interest "at such rate as the Directors of the Company may declare, but not less than 3½ percent per annum." Because the rate is indeterminate at the time the contract is made is no ground for the disallowance of any part of the interest paid, so long as the payment is in fact of interest. The petitioner is not a mutual life insurance company and there is no element of a dividend in the excess interest paid. In this respect this case differs from *Penn Mutual Life Insurance Co.* v. *Commissioner, supra.* We are of the opinion that the respondent was in error in the disallowance of excess interest in the amount of $7,158.30.

Under option 1 the petitioner is required upon the maturity of the policy by death to make installment payments to the beneficiary during the settlement period, such installment payments to include interest computed at the rate of 3½ percent per annum. Under option 4 the petitioner agrees to make:

Payments of equal annual, semi-annual, quarterly or monthly installments of such an amount as may be selected until the net proceeds together with interest at such rate as the Directors of the Company may declare, but not less than 3½% per annum, shall have been exhausted. * * *

The petitioner argues on brief that there should be no difference in treatment between the interest payments under option 1 and under option 4. The only real difference between the options is that under option 1 the insured or the beneficiary elects to receive proceeds of the policy in equal monthly installments computed at the rate of 3½ percent per annum. In addition to the guaranteed payments the payee may receive additional interest. Under option 4 the rate of interest is not fixed. The payee elects the amount of the installment and he receives that installment until the proceeds of the policy with interest have been exhausted.

We hold, following *Penn Mutual Life Insurance Co.* v. *Commissioner, supra*, that the petitioner may not deduct the interest where the insured has elected the option, but that it may deduct the interest where the beneficiary has elected the option. This is true, not only of the guaranteed interest of 3½ percent per annum, but also of the excess interest paid.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN did not participate in the consideration of or decision in this report.

ARUNDELL and BLACK dissent for the reasons set forth in the dissenting opinion in *Equitable Life Assurance Society of the United States*, 44 B. T. A. 293.